## CLELAND v. SMART.

1. LICENSES—BLUE-SKY LAW—RIGHT TO RECOVER PURCHASE MONEY.
   The right to recover moneys paid for purchase of corporate stock which was not authorized by law to be sold is determined by the so-called blue-sky law (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

2. SAME—CONSTRUCTION OF BLUE-SKY LAW.
   The so-called blue-sky law should not be rendered impotent by a narrow interpretation of its language (2 Comp. Laws 1929, § 9769 *et seq.*, as amended by Act No. 165, Pub. Acts 1941).

3. SAME—PRESIDENT AS AGENT OF CORPORATION.
   President of corporation who wrote a letter to plaintiff from which it is a fair inference that he was urging her to purchase stock of the corporation and influencing her judgment in favor thereof *held*, an "agent" of the corporation as the term is

---

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 47 Am. Jur., Securities Acts, §§ 3, 22-26, 39-50.
[1-4] Blue Sky Laws, constitutionality and effect of.  87 A.L.R. 42, at pp. 43, 61, 71, 127.

defined in the so-called blue-sky law (2 Comp. Laws 1929, § 9770, as amended by Act No. 165, Pub. Acts 1941; § 9771, as amended by Act No. 37, Pub. Acts 1935).

4. SAME—BLUE-SKY LAW—AGENT.

As the term "agent" is used in the so-called blue-sky law, it is to be construed in view of the whole statute and its expressed and evident purpose, as including not only an authorized agent but, also, any person who holds himself out to be an agent, whether he is a true agent or a false or volunteer agent who has no real authority to act for the assumed principal (2 Comp. Laws 1929, § 9770, as amended by Act No. 165, Pub. Acts 1941; § 9771, as amended by Act No. 37, Pub. Acts 1935).

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 6, 1948. (Docket No. 5, Calendar No. 43,776.) Decided April 6, 1948.

Assumpsit by Elizabeth Cleland against Carroll M. Smart and Plastic Arts Corporation, a Michigan corporation, for money paid for stocks sold in violation of blue-sky law. Summary judgment for plaintiff. Defendant Smart appeals. Affirmed.

*J. Gilbert Quail,* for plaintiff.

*Fred Dye* and *Norman P. Burau,* for defendant Smart.

REID, J. This is an action in assumpsit brought under the provisions of the statute commonly designated as the blue-sky law, 2 Comp. Laws 1929, § 9769 *et seq.,* as amended by Act No. 165, Pub. Acts 1941 (Comp. Laws Supp. 1940, 1943, § 9769 *et seq.,* Stat. Ann. and Stat. Ann. 1944 Cum. Supp. § 19.741 *et seq.*).*

Plaintiff sued for recovery of moneys paid for purchase of stock which was not authorized by law

---

* Act No. 271, Pub. Acts 1947, was not in effect when the cause of action in this case arose.

to be sold. After the case was at issue, plaintiff moved for summary judgment against both defendants. Defendant Smart filed an affidavit of merits. Plaintiff had judgment for $1,500 and costs against both the individual defendant and defendant corporation. Defendant Smart appealed; defendant Plastic Arts Corporation did not appeal. For convenience, we will hereinafter refer to defendant Smart as the defendant.

On or about November 15, 1944, defendant was introduced to plaintiff by Vera Harper, a friend of plaintiff, Miss Harper being the secretary of the Plastic Arts Corporation, of which corporation defendant was president. Defendant admits that on November 17, 1944 he wrote a letter to plaintiff, a photostatic copy of which letter is attached to plaintiff's affidavit in support of her motion for summary judgment. The letter is as follows:

"Smart Safety Engineering Corporation
19417 Derby Avenue
Detroit 3, Michigan

11-17-44

"Carroll M. Smart,
    President and General Manager
"Miss Elizabeth Cleland
1538 East Strathcona Avenue
Detroit, Michigan
"*Dear Miss Cleland:*

"At our last regular meeting, your name for membership in the Plastic Arts Corporation, was placed for nomination by your sponsor, Vera Harper.

"The vote of acceptance was unanimous and I hereby wish to notify you of the results.

"You are now a member of Plastic Arts Corporation and I have reserved 2,500 shares of stock in your name. Stock certificates in the amount of $1,350 will be issued to you in the very near future.

"We are happy to welcome you into our organiza-

tion and have every confidence your association with us will be both pleasant and profitable.

Very truly yours,
S/ CARROLL M. SMART,
President."

"CMS/ja"

On or about January 12, 1945, plaintiff by payment of money completed the purchase of 1,500 shares of the treasury capital stock of Plastic Arts Corporation. Defendant admits that he voted to admit plaintiff as a stockholder and that the said 1,500 shares of stock were sold by Plastic Arts Corporation to plaintiff through defendant as an officer of Plastic Arts Corporation but claims that plaintiff, who was acquainted with other officers and directors of Plastic Arts Corporation, first discussed the purchase of stock in said corporation with them and on the basis of information received from those other officers and directors and without any representations, inducements or promises by defendant, purchased the said stock in the corporation, receiving full consideration therefor, and that no fraud or misrepresentation of any kind or nature whatsoever was practiced upon plaintiff by defendant. Defendant further admits that $1,500 was paid to him as an officer of Plastic Arts Corporation for said stock and alleges that Ruth M. Harper, another officer of Plastic Arts Corporation, delivered the stock certificates to plaintiff.

Defendant admits that the capital stock of Plastic Arts Corporation at the time of its sale to plaintiff or at any time thereafter was not approved for sale by the Michigan corporation and securities commission and admits that he was not licensed or authorized as a broker to sell the same.

Defendant admits receiving notice and demand for return of purchase money prior to the institution of the suit, but denies that physical tender

of the stock was made before suit was brought. It appears that the stock certificates were tendered in court. The sufficiency of the tender is not specifically attacked in defendant's statement of questions involved.

In his affidavit of merits, defendant states that to the best of his knowledge and belief he was never authorized, empowered or appointed by the corporation to sell the stock. The record nowhere shows the actual agency of defendant but on the contrary contains his denial of agency. However, defendant's actions and representations clearly indicated that he was making himself a participant in the procurement of the sale and that he held himself out to plaintiff as an agent.

In addition to the admitted facts, hereinbefore noted, from defendant's letter of November 17, 1944, taken as an entirety, the inference is fair that he was writing the letter to plaintiff for the purpose of urging upon her attention the matter of her purchasing stock, and influencing her judgment in favor thereof. Defendant in the letter further stated, "I have reserved 2,500 shares of stock in your name." The concluding sentence of the letter is, "We are happy to welcome you into our organization and have every *confidence* your association with us will be both pleasant and *profitable*." (Italics supplied.) This coming from the president of the company, who must be assumed to have knowledge of its affairs, must be considered as an active inducement and persuasion on the part of defendant to cause plaintiff to complete the transaction. It is to be noted that payment to defendant for the stock was made after plaintiff's receipt of the foregoing letter and on or about January 12, 1945. Defendant signed the stock certificates as president of the corporation, knowing that the stock was to go to plaintiff.

From defendant's actions and representations and plaintiff's purchase pursuant thereto, it is to be considered that plaintiff concluded that defendant was the agent of the corporation for the purpose of the sale.

Plaintiff cites *Chambers* v. *Beckwith,* 247 Mich. 255, in which we note the following (p. 260):

"If her [plaintiff's] testimony was true, and the jury believed it, defendant recommended the purchase of the stock, took the checks for the purchase price, and, as president of the company, signed the stock certificates sent to her. If he did these things, he was liable in this action."

The cause of action in the *Chambers Case* arose while a former blue-sky law, Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11945 *et seq.*) was in force. That law was afterwards repealed and Act No. 220, Pub. Acts 1923, as last amended by Act No. 165, Pub. Acts 1941, was in effect when this cause of action arose. However, for consideration of the dispute in the case at bar, the act of 1915 was sufficiently analogous to the statute governing this case that the *Chambers Case* is of some value as showing that the court should not and did not adopt a narrow and restricted interpretation of the blue-sky law. Judgment for Chambers was upheld even though Act No. 46, Pub. Acts 1915, contained no express enactment of a clause reciting that a violation of the act carried civil liability. The rights of plaintiff in the case at bar are governed by a statute which does expressly provide in different sections for both civil and criminal liability and we should consider and apply the civil liability provided for in the statute in determining the instant case.

Plaintiff in this case planted her action upon the blue-sky law in effect at the time her action arose, section 20 of which law as amended by Act No. 37,

Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9788, Stat. Ann. § 19.760), is as follows:

"Sec. 20. Every sale or contract for sale of any security, not accepted for filing or otherwise exempt under this act or made contrary to any order of the commission, or made contrary to any provision of this act, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section: Provided, That no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale. No purchaser otherwise entitled shall claim or have the benefit of this section, who, having knowledge of the fact that such sale was made in violation of the provisions of this act shall have refused or fail within a reasonable time to accept the voluntary offer of the person making the sale to take back the securities in question and to refund the full amount paid by such purchaser."

The word "agent" as used in section 20 is subject to the explanation and meaning set forth in section 2 of the act, as amended by Act No. 165, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 9770, Stat. Ann. 1944 Cum. Supp. § 19.742), subdivision (h) of which section 2 reads as follows:

"(h) The term 'solicitor,' 'solicitors,' 'agent' and 'salesman' shall include every natural person, other than dealer, broker or issuer, employed or appointed or authorized by a dealer, broker or issuer, to sell, trade or purchase securities in any manner in this State, or who takes subscriptions for the sale of any securities."

Part of the effect of subdivision (h) is to make clear that certain persons are meant to be included in the terms, solicitor, solicitors, *agent* and salesman, who otherwise might not be thought to be meant by the act to be in such category.

We note the following from *People* v. *Montague,* 280 Mich. 610, 619:

"The act [blue-sky law] should not be rendered impotent by a narrow interpretation of its language."

We consider that defendant made himself liable as though an agent, notwithstanding that he was not in fact shown to have been authorized to act as an agent.

We consider that for the purposes of determining civil liability under the act, the word "agent" in section 20 above quoted is to be construed in view of the whole statute and its expressed and evident purpose, as including not only an authorized agent but, also, any person who holds himself out to be an agent, whether he is a true agent or a false or volunteer agent who has no real authority to act for the assumed principal. In so construing the word "agent" we further have in mind the provisions of section 3 of the blue-sky law, as amended by Act No. 37, Pub. Acts, 1935 (Comp. Laws Supp. 1940, § 9771, Stat. Ann. § 19.743), which is as follows:

"SEC. 3. No person, either *acting* personally or through an agent, *or as the agent of another,* shall on and after the date this act goes into effect, sell or trade any security to, and/or with any person in the State of Michigan contrary to the provisions of this act. The *provisions of this act shall be liberally construed* to the end *that the purposes thereof may be accomplished* by preventing fraud, deception and imposition on purchasers of securities." (Italics supplied.)

It clearly appears from the admitted facts in this case that defendant Smart acted as the agent of the corporation. By so acting he made himself liable as though an agent.

· The judgment appealed from is affirmed. Costs to plaintiff.

Bushnell, C. J., and Sharpe, Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred.