FERAR v. HALL.

1. LICENSES—ORIGINAL SUBSCRIPTION BY 25 OR LESS INCORPORATORS.
Original subscription to capital stock of corporation need not
be passed upon by the corporation and securities commission,
where the articles of incorporation are signed by the incorpo-
rators in person and they do not exceed 25 in number (CL 1948,
§ 451.105[f]).

2. SAME—BLUE SKY LAW—EXEMPTIONS—BURDEN OF PROOF.
The burden of proof of exemption of a sale of corporate stock
from necessity for approval by the corporation and securi-
ties commission is upon the party claiming the same (CL
1948, § 451.106).

3. SAME—BLUE SKY LAW—ISOLATED TRANSACTION.
Sale of stock to plaintiff which was 1 of 22 such sales by
president of corporation was in violation of blue sky law,
where the stock had not been approved for filing and sale
to the public by the corporation and securities commission
and was not an isolated transaction but made in the course
of repeated and successive transactions (CL 1929, § 9775,
as amended by PA 1945, No 295; CL 1948, §§ 451.103, 451.-
106, 451.120).

4. SAME—BLUE SKY LAW—SALE BY PRESIDENT OF CORPORATION.
The president of a corporation who sold its stock in violation
of the blue sky law is personally liable in an action to re-
cover money paid for said stock (CL 1948, § 451.120).

---

REFERENCES FOR POINTS IN HEADNOTES
[2] Generally as to proof in proceeding before securities commis-
sion, see 47 Am Jur, Securities Acts, § 33.
[3, 8] 47 Am Jur, Securities Acts, § 21.
[3, 8] Transactions within blue sky laws. 87 ALR 53, 57, 85.
[4, 8] 47 Am Jur, Securities Acts, § 46.
[4, 8] Personal civil liability of corporate officers and directors in
case of sale of bonds or stock in violation of statutory require-
ments. 144 ALR 1356.
[5, 7, 8] 47 Am Jur, Securities Acts, § 42.
[5, 7, 8] Validity of sale in violation of blue sky laws. 87 ALR 98.
[9] 3 Am Jur, Appeal and Error, §§ 1201, 1218.

5. SAME—BLUE SKY LAW—LIABILITY OF CORPORATION.
   The corporation whose stock was sold by its president in vio-
       lation of the blue sky law and which received the money
       paid therefor by plaintiff is liable in an action to recover
       the money paid for the stock (CL 1948, § 451.120).

6. SAME—CONSTRUCTION OF TERM "AGENT."
   The term "agent," as used in the blue sky law, is to be construed
       in view of the whole statute and its expressed and evident pur-
       pose, as including not only an authorized agent, but, also, any
       person who holds himself out to be an agent, whether he is a
       true agent or a false or volunteer agent who has no real author-
       ity to act for the assumed principal (CL 1948, § 451.101 et
       seq.).

7. SAME—BLUE SKY LAW—FRAUD—QUESTIONS REVIEWABLE.
   Whether or not president of corporation was guilty of fraud
       in making sale of its stock to plaintiff need not be deter-
       mined, where it is clear the sale was made in violation of
       the blue sky law (CL 1948, § 451.101 et seq.).

8. SAME—BLUE SKY LAW—DIRECTED VERDICT—ISOLATED TRANSAC-
TION.
   Plaintiff was entitled to directed verdict in action for recovery
       of money paid for stock of a corporation, which had not been
       accepted for filing and public sale by the corporation and securi-
       ties commission, where it is not disputed that plaintiff paid
       the money, that he tendered return of the stock and de-
       manded his money back, that same has been refused, defendant
       president of the corporation participated in the sale either
       as owner or for the corporation and the corporation re-
       ceived the money, and the sale was 1 of 22 such transactions,
       since it was clearly in violation of the blue sky law (CL 1948,
       § 451.101 et seq.).

9. NEW TRIAL—ABSENCE OF ISSUE OF FACT.
   A new trial upon reversal of judgment for defendant will not
       be granted where there are no factual issues involved and
       plaintiff is entitled to directed verdict and judgment.

Appeal from Wayne; Brown (William B.), J., pre-
siding.   Submitted January 9, 1951.   (Docket No.
64, Calendar No. 44,896.)   Decided April 3, 1951.

Action by Robert Ferar against Cortez R. Hall
and others to recover amount invested in stock of

defendant Manchester Handle & Turning Company. Directed verdict and judgment for defendants other than Hall. Verdict and judgment for defendant Hall. Plaintiff appeals. Reversed and remanded for judgment against defendants Hall and the corporation.

*Meyer R. Rubin,* for plaintiff.

*Bloom & Bloom,* for defendants.

BOYLES, J. Plaintiff invested $1,800 in the common stock of the corporate defendant and brought this suit to recover his investment on the grounds that he had been defrauded, that his investment had been induced by false reports, and that the stock had been sold to him in violation of the blue sky law.[*] The defendants are the corporation, Cortez R. Hall, its president and principal stockholder, Grace M. Brown, secretary, and Guerrier and Stimson, 2 directors. The case was tried before a jury. At the conclusion of plaintiff's case, and again at the conclusion of all the proofs, defendants moved for a directed verdict on the ground that neither fraud nor violation of the blue sky law had been shown. Plaintiff moved for a directed verdict on the ground that the defendants had violated the blue sky law. The court denied plaintiff's motion for a directed verdict and granted defendants' motion to direct a verdict of no cause for action as to all the defendants, with the exception of Dr. Hall. As to Dr. Hall, the court submitted to the jury the question whether Dr. Hall had been guilty of misrepresentation or fraud.

The jury returned a verdict in favor of defendant Hall, no cause for action on the fraud charge. Plaintiff appeals from the judgment for defendants,

---

[*] CL 1948, § 451.101 *et seq.* (Stat Ann 1949 Cum Supp § 19.741 *et seq.*), last amended by PA 1949, No 85.

from the denial of his motion for a directed verdict, and from the denial of a subsequent motion for judgment *non obstante veredicto*. There is no cross appeal. Most of the facts are not in dispute.

The defendant corporation filed articles of incorporation in April, 1945, showing the total authorized capital stock to be 10,000 shares with par value $10 per share, and that "the amount of paid-in capital with which this corporation will begin business is $100,000." The articles were signed by 24 incorporators, each of whom signed the articles in person and not by agent, thus avoiding the initial necessity for having the subscriptions to capital stock passed upon by the corporation and securities commission.* The authorized capital stock, $100,000, had been subscribed for in full by the 24 original incorporators who signed the articles. However, only about $22,000 of the $100,000, originally subscribed for, was ever paid in. The shares of many of the subscribers who failed to pay for the stock they had subscribed for were later issued to them and at the same time transferred in blank by them and surrendered up. New stock certificates were then issued by the corporation, to additional purchasers of stock. The stock was never accepted for filing or approved by the corporation and securities commission.

The company did not prosper, and late in 1945 Dr. Hall reported at a meeting of stockholders that more funds were necessary. A Mr. Ferman, an engineer, became a stockholder, vice-president and a director, and took over general supervision of production and sale of the company's product. Plaintiff, a close friend of Ferman, became interested in

---

* PA 1945, No 295, § 5(f). The stock transactions in this case occurred in 1946, and are controlled by the blue sky law then in effect as last amended by PA 1945, No 295. The subsequent amendment by PA 1947, No 271, has no bearing. See CL 1948, § 451.105 (f) (Stat Ann 1949 Cum Supp § 19.745[f]). This particular subsection (f) was not amended in 1947.

the corporation and visited the plant at Saline. Plaintiff and Ferman then went to see Dr. Hall, plaintiff examined the company's books and records, and in January, 1946, plaintiff purchased 100 shares of stock through Dr. Hall which had been subscribed for by one Clarence Rostin, but who was delinquent in payment and who had surrendered his stock and assigned it in blank. In March, 1946, plaintiff purchased 100 more shares of stock through Dr. Hall which had been subscribed for by one Stephen Stolmar, who had already surrendered it up, failing to pay for it. Plaintiff had no contact with either Stolmar or Rostin.

The controlling question in the case is whether said stock was sold to plaintiff in violation of the blue sky law. Said law provides:

"Sec. 3. No person, either acting personally or through an agent, or as the agent of another, shall on and after the date this act goes into effect, sell or trade any security to, and/or with any person in the State of Michigan contrary to the provisions of this act. The provisions of this act shall be liberally construed to the end that the purposes thereof may be accomplished by preventing fraud, deception and imposition on purchasers of securities." CL 1948, § 451.103 (Stat Ann § 19.743).

"Sec. 7. No security shall be sold to or traded by any person within the State of Michigan unless and until the entire class of securities, of which such security is a part, shall have been accepted for filing for sale, issuance, or trading, by the commission, excepting as the security itself or the transaction therein is exempted by either section 4 or 5 of this act." CL 1948, § 451.107 (Stat Ann 1949 Cum Supp § 19.747).

"Sec. 20. Every sale or contract for sale of any security, not accepted for filing or otherwise exempt under this act or made contrary to any order of the

commission, or made contrary to any provision of this act, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section." CL 1948, § 451.120 (Stat Ann § 19.-760).

Defendants admit that the stock had not been accepted for filing by the corporation and securities commission, but claim that the stock was sold, transferred and delivered to plaintiff by Rostin and Stolmar in isolated transactions and that therefore such sales were exempt from the provisions of the blue sky law by section 5, the applicable part of which was as follows :*

"Sec. 5. * * * The provisions of this act shall not apply to the sale of any security in any of the following transactions: * * *

"(c) In an isolated transaction in which any security is sold, offered for sale, or delivered by the owner thereof, such sale or offer for sale or delivery not being made in the course of repeated and successive transactions of a like character by such owner, and such owner not being the issuer or a dealer or the underwriter of such security;" PA 1945, No 295.

Decision hinges upon whether the sales of stock to plaintiff were isolated transactions within the meaning of the above-quoted section. "The burden of proof of any such exemption shall be upon the party claiming the same." CL 1948, § 451.106 (Stat Ann § 19.746).

---

* The transactions in this case occurred in 1945–1946, under the above act in effect at that time. For later amendment, see PA 1947. No 271 (CL 1948, § 451.105 [Stat Ann 1949 Cum Supp § 19.745]).

From June, 1945, to and including June, 1946, Dr. Hall sold stock, either for himself from his own holdings, or for the corporation, to approximately 22 individuals who were not original shareholders or subscribers to stock. These sales were made in the course of repeated and successive transactions of a like character, by Dr. Hall as the owner, or by him as agent for and on behalf of the corporation. These sales were made to provide funds for the corporation, to make up for the failure of subscribers to pay for their stock, which they had turned back. Plaintiff never met Mr. Rostin, who signed his stock certificate in blank, surrendered it, and a stock certificate was issued by Dr. Hall as president of the corporation. Neither did the plaintiff have any direct dealings with Mr. Stolmar. The $1,800 paid by plaintiff for his stock went to the corporation. Plaintiff's negotiations for the stock were with Dr. Hall, not with either Rostin or Stolmar. They did not sell their stock, or their subscription rights, to the plaintiff. The corporate stock record received in evidence establishes that shares of corporate stock were sold and delivered to at least 22 different individuals, who were not among the 24 original subscribers who had signed the articles. The method followed by Dr. Hall was to have other subscribers sign stock certificates in blank and issue new stock certificates to the purchasers, or to transfer stock from his own subscribed shares. Dr. Hall was either selling his own stock, as owner, or selling stock of the corporate defendant, acting for it as its agent. The sales of such stock, including the sales to the plaintiff, were sales of a security which had not been accepted for filing by the corporation and securities commission. They were made in the course of repeated and successive transactions of a like character, were not isolated transactions, were not exempt from the provisions

of the blue sky law, and the sales were made in violation of that law.

It is not disputed that plaintiff paid $1,800 for the stock, that he tendered the return of the stock and demanded his money back, and that the same has been refused. Plaintiff asked judgment for $1,800 by reason, among others, of the violation of the provisions of the blue sky law. There was no question of fact to be submitted to the jury as to the participation in the sales by Dr. Hall, either as owner or for the corporation, or as to the corporate defendant, under the count in the declaration for violation of the blue sky law. The fact of the sales, the amount paid for the stock, the tender, rescission and demand were not controverted, and Dr. Hall's participation in the sales and transfers was admitted by him. The corporation is liable, as a matter of law, for issuing the stock not authorized by the corporation and securities commission, and Dr. Hall is also liable, as a matter of law, for the amount which plaintiff paid for the stock.

"The president of a corporation who sold its stock in violation of the blue sky law is personally liable in an action to recover the money paid for said stock.

"The corporation whose stock was sold by its president in violation of the blue sky law was also liable, and the trial court was in error in directing a verdict in its favor." *Noll* v. *Woods* (syllabi), 231 Mich 224.

"President of corporation selling stock therein which was not approved under CL 1915, § 11945 *et seq.*, is not excused from liability because, before the company was organized, subscription for the stock was signed by purchaser, since the taking of subscriptions for such stock was an offense under section 11958. * * *

"Corporation president who recommended purchase of its stock, took the checks for the purchase

thereof, and, as president of the company, signed the stock certificates sent to purchaser, was liable for amount paid, where said stock had not been approved and its sale was in violation of blue sky law." *Chambers* v. *Beckwith* (syllabi), 247 Mich 255.

"As the term 'agent' is used in the so-called blue sky law, it is to be construed in view of the whole statute and its expressed and evident purpose, as including not only an authorized agent but, also, any person who holds himself out to be an agent, whether he is a true agent or a false or volunteer agent who has no real authority to act for the assumed principal (CL 1929, § 9770, as amended by PA 1941, No 165; § 9771, as amended by PA 1935, No 37)." *Cleland* v. *Smart* (syllabus), 321 Mich 46.

There was no sufficient proof as to facts on which to hold the other individual defendants liable, either for violation of the blue sky law, or for misrepresentation or fraud. With the exception of Dr. Hall and the corporation, the court properly directed a verdict of no cause for action as to the other defendants.

In view of the foregoing conclusions, we need not consider the verdict of the jury as to whether Dr. Hall was guilty of fraud. We find no merit in other contentions of appellant; and in the absence of any factual issue as to the violation of the blue sky law there is no need for the granting of a new trial.

The case is reversed and remanded for entry of judgment for the plaintiff against Dr. Hall individually and against the corporate defendant for $1,800, and costs of both courts.

REID, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.