# STATE OF MICHIGAN

# COURT OF APPEALS

JAIME PRANSKY,

        Plaintiff-Appellant,

v

FALCON GROUP, INC.,

        Defendant-Appellee.

FOR PUBLICATION
June 18, 2015
9:05 a.m.

No.   319266; 319613
Oakland Circuit Court
LC No.   2013-134611-CK

Before:  WILDER, P.J., and OWENS and M. J. KELLY, JJ.

M. J. KELLY, J.

In this dispute over the validity of a consulting agreement, plaintiff, Jaime Pransky, appeals by right the trial court's opinion and order dismissing her claims against defendant, Falcon Group, Inc., under MCR 2.116(C)(8) and MCR 2.116(C)(10).[1] She argues the trial court erred when it determined that the consulting agreement did not require Falcon Group to provide any services that would require it to be registered under Michigan's Uniform Securities Act (2002), MCL 451.2101 *et seq.* Contrary to the trial court's determination, Pransky maintains, the consulting agreement required Falcon Group to provide services, which could only be provided by someone registered under the Securities Act; and, because Falcon Group was not registered under the act, the agreement was illegal and could be rescinded. For similar reasons, she contends the trial court erred when it determined that her remaining claims were invalid. Pransky also argues that the trial court did not have the authority to order her to pay Falcon Group's attorney fees as damages under the agreement because Falcon Group did not file a counterclaim for damages. For the reasons more fully explained below, we conclude the trial court did not err when it dismissed Pransky's claims against Falcon Group. However, we agree that the trial court did not have the authority to award Falcon Group damages under the consulting agreement because Falcon Group did not sue Pransky for breach of contract.

---

[1] Pransky first appealed the trial court's order dismissing her claims and this Court assigned that appeal Docket No. 319266. After the trial court entered an order requiring Pransky to pay Falcon Group's attorney fees, she appealed that order and this Court assigned that appeal Docket No. 319613. This Court then consolidated the appeals. See *Pransky v Falcon Group, Inc*, unpublished order of the Court of Appeals, entered January 7, 2014 (Docket Nos. 319266 and 319613).

Accordingly, we affirm the trial court's opinion and order dismissing Pransky's claims, but vacate the trial court's order compelling her to pay Falcon Group's attorney fees.

## I. BASIC FACTS

Pransky averred that she intended to open and operate a health and wellness spa in her home state of Vermont. She claimed that Falcon Group's principal, David Maciejewski, promised to find investors for her spa. She said Maciejewski introduced her to a potential investor, who told her that he wanted to invest $20 million in a franchised version of her spa. She felt pressured to sign a consulting agreement in order to obtain the financing.

Pransky executed the consulting agreement with Falcon Group in August 2012. As part of the agreement, Falcon Group represented that it was in the business of providing "non-legal advice and consulting services to individuals and to business entities concerning, among other matters: mergers and acquisitions, marketing techniques and ideas, business opportunities, business operations, business management, financial issues and concerns, and business assets and liabilities." Falcon Group recited that it would provide consulting services to Pransky in an effort to help her "build a publicly traded franchised company." Although Falcon Group stated it was in the business of providing advice and consultation, the agreement primarily involved compensating Falcon Group for its efforts to obtain investments or financing for Pransky's business.

As a preliminary matter, Pransky agreed to pay Falcon Group a $50,000 retainer, which was not refundable. The first $20,000 was due upon signing the agreement and the remaining $30,000 was due upon receipt of the first investment. Pransky apparently added a handwritten provision that made the $30,000 payment contingent on the first investment being at least $30,000. Pransky also agreed to pay Falcon Group a "Success Fee" if she was able to sell her business through Falcon Group's efforts under the agreement. She agreed to pay a fee equal to 10% of "any monies [Falcon Group] raises or causes to be raised by [Falcon Group] or through [Falcon Group's] connections . . . ." She similarly agreed to pay Falcon Group a fee equal to 3% of any financing that Pransky might obtain through Falcon Group's "efforts or connections," which included any "line of credit or mortgage through a bank or financial institution introduced by [Falcon Group]." These fees were to be paid out of the escrowed funds at the closing of the funding or financing. Finally, according to Pransky, she hand wrote a paragraph into the agreement that specifically required Falcon Group to provide its consulting services in connection with "identifying and procuring investors and financing" for Pransky's business.

In April 2013, Pransky alleged she notified Falcon Group that she discovered that it was not registered as a broker-dealer under the Securities Act and, for that reason, believed it could not legally perform the services required by the consulting agreement. Pransky informed Falcon Group that she was rescinding the consulting agreement and demanded the return of her $20,000 retainer.

In June 2013, Pransky sued Falcon Group to recover the $20,000 retainer. She alleged that Falcon Group acted as a "finder" under the Securities Act and, as such, had to be registered as a "broker-dealer." Because it was not registered under the act, the consulting agreement was illegal and void. Accordingly, she asked the trial court to rescind the agreement and order

Falcon Group to return her $20,000 retainer. Pransky also alleged that Falcon Group's failure to disclose that it was not registered as a broker-dealer, as required by the Securities Act, amounted to silent fraud or misrepresentation and a breach of the Securities Act. Finally, she alleged that Falcon Group's refusal to return the $20,000 retainer that it took under the illegal agreement amounted to conversion.

In October 2013, Falcon Group moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Falcon Group stated that it was a business intermediary and that Pransky hired it to provide advice and consultation "to get her to the point where she, as an officer or manager of an entity (i.e. an 'issuer' under securities jargon) would be in a position to sell her own securities." It also asserted that it was undisputed that it provided Pransky with valuable advice on the development of her business, but she refused to follow the advice. It then argued that each of her claims must be dismissed.

Falcon Group argued that the consulting agreement did not involve any services for which it had to be registered under the Securities Act. It stated that the evidence showed that Pransky did not own a business entity that had or could issue securities and, therefore, there were no securities that Falcon Group could sell on Pransky's behalf as a broker-dealer. Falcon Group further argued that, even if the "success fee" provision of the consulting agreement violated the Securities Act, the severability clause would preserve the remainder of the agreement. Because the only provisions which might arguably be invalid under the Securities Act could be severed, and Pransky did not allege that Falcon Group failed to provide her with consulting and advising services, Falcon Group argued that the trial court should dismiss Pransky's claims under MCR 2.116(C)(8).

Pransky argued in response to Falcon Group's motion that she was entitled to summary disposition under MCR 2.116(I)(2) because the consulting agreement on its face demonstrated that Falcon Group had to be registered under the Securities Act in order to provide the services identified in the agreement. Pransky notes in particular that the agreement included compensation for "monies" that Falcon Group "raises or causes to be raised" or raised through "its connections," which, she maintained, involved performing as a broker-dealer, agent, or investment advisor under the Securities Act. She also argued that Falcon Group agreed to connect her with investors, which made it a finder under the Securities Act. Because finders must be registered as broker-dealers and it was undisputed that Falcon Group was not registered as a broker-dealer, she maintained that the consulting agreement was void as against public policy. Because the agreement was void in its entirety, the severability clause could not save the agreement and her remaining claims also remained viable.

The trial court held a hearing on Falcon Group's motion in November 2013. The trial court noted that Pransky's claims were each premised on the belief that Falcon Group had to be registered under the Securities Act in order to perform the services required by the consulting agreement. The trial court stated that the agreement unambiguously required Falcon Group to perform services that fell within the definition of a finder under the Securities Act, but determined that the Securities Act did not require finders to be registered. Moreover, because the consulting agreement did not require Falcon Group to "have any meaningful role in effecting the actual transaction," the court determined that the agreement did not require Falcon Group to act as an agent or broker-dealer. Finally, the agreement did not require Falcon Group to advise

-3-

anyone to invest, purchase, or sell a security. The consulting agreement, the trial court concluded, did not on its face require Falcon Group to engage in any activity for which it would have to be registered under the Securities Act. Having determined that Falcon Group did not have to be registered under the Securities Act in order to perform the services required under the act, the trial court concluded that Pransky's claims premised on Falcon Group's failure to register necessarily failed. For that reason, it granted Falcon Group's motion for summary disposition.

In November 2013, Falcon Group moved for its costs and attorney fees, as permitted under the consulting agreement. Later that same month, the trial court granted the motion and ordered Pransky to pay more than $6,800 in attorney fees to Falcon Group.

Pransky now appeals in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

On appeal, Pransky argues the trial court erred when it determined that the consulting agreement did not require Falcon Group to perform any service that would require it to be registered under the Securities Act. For that reason, she maintains, the trial court erred when it granted summary disposition in favor of Falcon Group.[2] This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court "correctly selected, interpreted, and applied the relevant statutes." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). Finally, this Court reviews de novo the trial court's construction of a contractual agreement. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. THE SECURITIES ACT

Michigan's Legislature enacted the Securities Act to protect the public from fraud and deception in the issuance, sale, and exchange of securities. See *Fred J. Schwaemmle Const Co v Dep't of Commerce*, 420 Mich 66, 77; 360 NW2d 141 (1984) (examining the prior version of the Securities Act).[3] It accomplished this in significant part by limiting the types of securities that may be offered and sold and by prohibiting certain practices involved with the offer and sale of securities. See MCL 451.2301 (prohibiting persons from offering or selling a security in Michigan unless the security meets certain criteria); MCL 451.2501 (prohibiting persons from

---

[2] Because the trial court considered evidence outside the pleadings—the consulting agreement—in reaching its decision, we review the decision to grant summary disposition as having been made under MCR 2.116(C)(10). See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

[3] The prior act was the uniform securities act, see MCL 451.816, and was patterned on the uniform securities act of 1956. See Uniform Securities Act (1956) (ULA).

directly or indirectly engaging in schemes or practices to defraud or making misrepresentations in connection with the offer, sale, or purchase of a security). However, it also chose to protect the public by regulating the persons who are involved with the offer and sale of securities. See MCL 451.2401 to MCL 451.2413. In particular, the Legislature prohibited persons from transacting business in this state as a broker-dealer, agent, or investment advisor unless he or she is registered as a broker-dealer, agent, or investment advisor under the act.[4] See MCL 451.2401(1); MCL 451.2402(1); MCL 451.2403(1).

## 1. BROKER-DEALERS AND FINDERS

On appeal, Pransky maintains that her consulting agreement with Falcon Group required it to perform services that fell within the definition of broker-dealer, agent, and investment advisor. She further contends that, although the trial court did not err when it determined that the agreement required Falcon Group to act as a finder, it erred when it stated that finders were not required to register under the Securities Act. In her view, the Securities Act specifically contemplates that finders must register as broker-dealers.

Under the Securities Act, a broker-dealer is defined to be "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account." MCL 451.2102(d).[5] By defining a broker-dealer to be a person "engaged in the business of effecting transactions in securities," *id.*, the Legislature limited the term to those persons whose business operations regularly include transactions in securities. See *Heligman v Otto*, 161 Mich App 735, 739, 741-742; 411 NW2d 844 (1987) (interpreting the definition of broker-dealer under the prior act, see MCL 451.801(d), which defined a broker-dealer to be "any person engaged in the business of effecting transactions in securities for the account of others or for his or her own account," and concluding that the isolated transaction at issue did not constitute being engaged in the business of effecting transactions). Moreover, it is not enough that the person's business involves transactions in securities in any way, the person's business must be one "effecting" transactions in securities. MCL 451.2102(d). The verb "effect" suggests something stronger than tangential involvement in the transfer of securities; rather, the person's business must involve bringing about or accomplishing the transactions in securities. See *The Oxford English Dictionary* (2d ed, 1991) (defining the verb to mean: "To bring about (an event, a result); to accomplish (an intention, a desire)."). As one foreign court has

---

[4] The Securities Act also regulates investment adviser representatives, federal covered investment advisers, and Michigan investment markets, but those categories are not at issue on appeal. See MCL 451.2404(1); MCL 451.2405(1); MCL 451.2453.

[5] The definition of broker-dealer corresponds to the definition of "broker" under federal securities law except that under federal law a broker is someone who acts for the account of others. See 15 USC 78c(a)(4)(A) (defining broker to mean "any person engaged in the business of effecting transactions in securities for the account of other"). Federal law defines the term dealer separately as someone who buys and sells securities for his or her own account. 15 USC 78c(a)(5)(A).

explained,[6] a broker-dealer is a person who participates in the transaction by effectuating the trade—that is, by performing any function in connection with processing the transaction. See *Overstock.com, Inc v Goldman Sachs & Co*, 231 Cal App 4th 513, 530-533; 180 Cal Rptr 3d 269 (2014) (examining the meaning of the terms "effect" and "effecting" as used in California's securities laws, and specifically referring to the definition of broker-dealer, which is the same as this state's definition); see also *Legacy Resources, Inc v Liberty Pioneer Energy Source, Inc*, 322 P3d 683, 688-690 (Utah, 2013) (construing the definition of broker under Utah's securities laws and holding that "one who is engaged in the business of 'effecting' a securities transaction is one who is involved in 'bring[ing it] about; mak[ing it] happen, caus[ing] or accomplish[ing it].'") (citation omitted); *Indus Partners, LLC v Intelligroup, Inc*, 77 Mass App 793, 796-798; 934 NE2d 264 (2010) (stating that a person effects transactions in securities when he or she participates in the transaction at key points in the chain of distribution); *In re Slatkin*, 525 F3d 805, 817 (CA 9, 2008) (examining federal securities law and stating that the operative term, "effecting", means to bring about or make happen). With regard to persons who find investors for securities, some courts have held that whether a person actively—as opposed to passively—solicits investors for securities is a factor to consider when determining whether that person's activities fall within the definition of a broker-dealer. See *Legacy Resources*, 322 P3d at 688. Other courts have held that the activities of a finder fall under the definition of broker-dealer. See *Black Diamond Fund, LLLP v Joseph*, 211 P3d 727, 734 (Colo App, 2009) ("Individuals who solicit investors by phone and in person, and who distribute documents and prepare and distribute sales circulars in the hope that potential investors will deposit money in the account, are seeking to effect securities transactions."). But this Court must be careful when considering whether the definition of broker-dealer necessarily includes the activities of finders because, unlike other jurisdictions, our Legislature has specifically addressed the activities of finders within our Securities Act.[7]

The Legislature defined a finder as a "person who, for consideration, participates in the offer to sell, sale, or purchase of securities by locating, introducing, or referring potential purchasers or sellers." MCL 451.2102(i). One might conclude that, by using the term "participating" rather than "effecting," the Legislature intended to differentiate between participating in the offer, sale, or purchase and "effecting" a transaction in securities—that is, the Legislature may have intended to exclude participation in that way from the definition applicable

---

[6] The Securities Act is a modified version of the Uniform Securities Act (2002). See 2008 PA 551; Uniform Securities Act (2002) (ULA). When interpreting a uniform act, this Court may look for guidance in the caselaw of other jurisdictions where the uniform act has been adopted. *Heritage Resources, Inc v Caterpillar Fin Serv Corp*, 284 Mich App 617, 632; 774 NW2d 332 (2009).

[7] The uniform version of the act does not include a definition for finder. See Uniform Securities Act (2002) (ULA), article 1. It appears that the provisions for finders were drawn from the prior version of the act. See, e.g., MCL 451.502(c); MCL 451.801(c); MCL 451.801(d)(5); MCL 451.801(i); MCL 451.801(*l*). Although the Legislature modeled the prior version of the act on the uniform securities act of 1956, the uniform law did not include provisions for finders. See Securities Act (1956) (ULA), § 401.

to broker-dealers. It is notable that the Legislature did not define broker-dealer to specifically include finders. See MCL 451.2102(d).[8] If the Legislature understood participating in the offer to sell, sale, or purchase of a security by locating, introducing, or referring potential purchasers and sellers as activities that amounted to "effecting transactions in securities," it would not have provided a separate definition for persons who engage in such activities; there would be no need for a separate definition because those persons would fall under the definition of broker-dealer. *Id.* Thus, by providing the term "finder" with its own definition and failing to include finders within the definition of broker-dealer, the Legislature expressed its intent to exclude the activities of finders from the activities that fall under the definition of broker-dealer. This is not to say that a person who acts as a finder might not also meet the definition of a broker-dealer, but, in order to respect the Legislature's decision to separately define finder as a category distinct from broker-dealer, we conclude that a person who meets the definition of a finder does not constitute a broker-dealer unless his or her participation goes beyond that provided under MCL 451.2102(i). See *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (stating that courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory). And, because the Legislature did not enact any statutory provision that requires finders to register *as finders*, we further conclude that the Legislature intended to exempt persons who limit their activities to those described under MCL 451.2102(i) from the registration requirements. Cf. MCL 451.2406(1) (providing a method for persons to register as a broker-dealer, agent, or investment advisor, but not providing any method for a person to register as a finder).

This construction is also consistent with the Legislature's overall scheme for regulating transactions in securities. The Legislature specifically regulated the practices of a broker-dealer or investment advisor who also provides services as a finder. See MCL 451.2413 (regulating acts by broker-dealers who act as finders); MCL 451.2502(2) (stating additional regulations that apply to investment advisors who act as a finder).[9] By imposing additional requirements on a broker-dealer or investment advisor who acts as a finder, the Legislature recognized that there was a distinction between the services provided by a broker-dealer or investment advisor and those provided by a finder. The broker-dealer plays a more active role in effecting the transaction than the finder, who might merely locate and introduce the sellers and buyers, but have no further part in the transfer of securities. This additional involvement might give rise to a conflict in interest between the broker-dealer's activities as a broker-dealer and his or her activities as a finder. Similarly, the impartiality of an investment advisor's advice might be compromised by the desire to obtain compensation for his or her finding activities. Indeed, the extra regulations for broker dealers address the potential for self-dealing that arises when a broker-dealer both solicits buyers and effects the transfer. See MCL 451.2413(a) (prohibiting a broker-dealer who acts as a finder from taking possession of the funds or securities for any

---

[8] Under the prior act, the Legislature specifically defined the term "investment advisor" to include finders. See MCL 451.801(*l*). Thus, finders had to register as investment advisors. See MCL 451.601(c).

[9] These sections do not appear in the uniform version. See Uniform Securities Act (2002) (ULA), article 4.

transaction in which the broker-dealer received payment as a finder); MCL 451.2413(b) and (e) (imposing disclosure requirements on a broker-dealer who also acts as a finder); MCL 451.2413(d) (requiring broker-dealers who act as finders to obtain certain types of information about the securities before participating in the offer, purchase, or sale of the securities); MCL 451.2413(f) (prohibiting broker-dealers who act as finders from locating, introducing, or referring persons that the broker-dealer knows or should reasonably know are not suitable investors). The extra regulations for investment advisors who act as finders are substantially similar. See MCL 451.2502(2)(a) to (f).

On the surface, it seems possible that the Legislature intended the activities of a finder to invariably meet the definition of a broker-dealer and merely provided a separate definition for the term "finder" in order to provide a convenient means to impose additional requirements on broker-dealers or investment advisors whose activities also involve serving as a finder. But this understanding leads to the incongruous result that persons who strictly confine their activities to locating, introducing, and referring purchasers and sellers in conformity with MCL 451.2102(i)—that is, who act as finders and not as a broker-dealers or investment advisors— would nevertheless be subject to all the regulations that apply to a broker-dealer in addition to the special requirements applicable to a broker-dealer who acts as a finder. In other words, every finder would automatically constitute a broker-dealer and finder, but not every broker-dealer would constitute a finder. Under this construction, we would have to conclude that the Legislature intended to subject persons who act strictly as finders to more comprehensive regulation than it applied to persons who act strictly as broker-dealers.[10]

This construction also leads to additional difficulties. If the definition of broker-dealer necessarily includes finders, then any person acting as a finder would have to register as broker-dealer. See MCL 451.2401(1) (prohibiting persons from transacting business as broker-dealer without being registered as a broker-dealer). Every finder who complied with the law would therefore be a "finder registered as a broker-dealer"; and, for that reason, there could never be an investment advisor who acts as a finder. See MCL 451.2102a(e)(*ix*) (excluding a "finder registered as a broker-dealer" from the definition of an investment advisor). Hence, the extra regulations imposed on investment advisors who act as finders would have no practical effect under this construction. Pransky in effect asks this Court to construe the definition of broker-dealer to always include finders such that a finder must register as a broker-dealer and fully comply with all the applicable regulations, notwithstanding that the Legislature elected to separately define finder, chose not to include finder within the definition of broker-dealer (or agent or investment advisor), and chose not to require finders to register. Because this Court must avoid a construction that renders any part of the statute surplusage or nugatory, we cannot construe the statute in this way. See *Recca*, 492 Mich at 177.

---

[10] It should also be recalled that nothing precludes a person acting as a finder under Michigan law from being deemed a broker-dealer under another state's law or under federal law.

It is important to recall that, by defining a finder within the act as a person who participates in the offer to sell, sale, or purchase of securities, the Legislature subjected finders to the general prohibition against the use of schemes to defraud, misstatements, and fraudulent or deceitful practices made "in connection with the offer, sale, or purchase of a security." MCL 451.2501. Accordingly, even though the Legislature did not require finders to specifically register as finders under the Securities Act, it still subjected finders to regulation under the act. See also MCL 451.2601 to MCL 451.2612. Of course, if a person's activities go beyond participating in an offer to sell or sale of securities by locating, introducing, or referring potential purchasers and sellers of securities, MCL 451.2102(i), that person might fall within the definition of a finder in addition to that of a broker-dealer, agent, or investment advisor, or any combination of those categories. In that case, the person would be subject to the regulations and registration requirements imposed on broker-dealers, agents, or investment advisors, as the case may be.

Pransky nevertheless argues that the Legislature's decision to specifically exclude finders who are registered as broker-dealers from the definitions of agent and investment advisor indicates that the Legislature intended to require finders to register as broker-dealers, even though it chose not to specifically provide such a requirement in the act. Normally, this Court must assume that the Legislature acted with due deliberation when it provided a separate definition for finder and chose not to include finders within the definition of a broker-dealer. Similarly, it must generally conclude that the Legislature elected to forego a statutory provision requiring finders to register as broker-dealers because it did not intend to require finders to register as broker-dealers. See *Recca*, 492 Mich at 177, 187. But even setting the canons of construction aside, there is nothing within the exceptions provided under the definition of agent or investor advisor that is inconsistent with treating finders as a distinct category from that of broker-dealers whose members are exempt from registration.

## 2. AGENTS AND INVESTMENT ADVISORS

The Legislature defined an agent to be "an individual other than a broker-dealer who represents a broker-dealer in effecting or attempting to effect purchases or sales of securities or represents an issuer in effecting or attempting to effect purchases or sales of the issuer's securities." MCL 451.2102(b). The Legislature, however, excluded from the definition of agent those persons who represent broker-dealers or issuers if the person was acting solely as a finder and registered as a broker-dealer: "The term [agent] does not include a person acting solely as a finder and registered as a broker-dealer under this act . . . ."[11] *Id.*

Pransky argues that this exclusion demonstrates that the Legislature intended to require finders to register as broker-dealers. But, contrary to Pransky's suggestion, the fact that the Legislature defined an agent to be a person "other than a broker-dealer" and then provided an exception to the definition of an agent for finders who are registered as "broker-dealers" can best be understood as a recognition by the Legislature that some finders are not broker-dealers and

---

[11] This exclusion does not appear in the uniform version. See Uniform Securities Act (2002) (ULA), § 102(2).

that a finder need not be registered as a broker-dealer. Because an agent is broadly defined to include a person who "represents" a broker-dealer or issuer in either "effecting" or "attempting to effect" a transaction in securities, MCL 451.2102(b), a finder who serves as a representative for a broker-dealer or issuer might easily fall within the definition of an agent by going beyond the activities stated under MCL 451.2102(i):[12]

> The activities of a finder easily can fall within the agent definition so as to require further registration. If a finder becomes an advocate and seeks to induce a person to invest, the exemption for activities as a finder is lost. A finder operating under the Act may not actively participate in the offer and sale but rather may introduce the individual investor to the issuer or its representative. Counsel to issuers, broker-dealers, and finders should exercise caution in reviewing and directing the finders' activities. Since the statutory distinction between finders and agents is not always clear, an active participant in the transaction will likely be classified an unregistered agent and endanger an exemption from registration. [Moscow & Makens, eds, Michigan Securities Reg (2d ed, 1994), § 4.09, p 116, discussing the prior securities act, which contained substantially similar definitions for finder and agent, see MCL 451.801(c) and MCL 451.801(i).][13]

By contrast, a person acting as an independent finder, rather than as the representative of a broker-dealer or issuer, will not fall within the definition of agent and need not be registered as either an agent or broker-dealer. Understood in this context, the exclusion from the definition for persons acting solely as finders, even if the finder is the representative of a broker-dealer or issuer, can best be construed as a means to avoid duplicate registration—that is, to prevent a finder whose activities rise to the level of an agent and broker-dealer from having to register as both an agent and a broker-dealer. This same logic applies to the exclusion provided for the definition of an investment advisor.

---

[12] By limiting the definition of an agent to those persons who represent a broker-dealer or issuer, the Legislature limited the term to those situations where the agent purports to act under authority of the broker-dealer or issuer. But a person can locate and refer investors without purporting to act under another's authority. See *Ferar v Hall*, 330 Mich 214, 222; 47 NW2d 79 (1951) (construing a prior version of the securities law and stating that an agent is one who is actually authorized to act for his or her principal, or holds himself or herself out as having such authority). This is consistent with the Legislature's prohibition on agents representing more than one broker-dealer or issuer at a single time. See MCL 451.2402(5). If the term "represents" were broadly construed to apply to all acts to locate and introduce interested parties at someone's request, a finder could never work for more than one broker-dealer or issuer.

[13] Pransky also relies on a June 2009 article in the Michigan Bar Journal concerning the newly enacted Securities Act, wherein these same two editors along with another co-author opined that a finder would have to register as a broker-dealer under the new act. But the authors did not offer any analysis or cite any authority to support their opinion. See Moscow, Makens, and Hansen, *New Michigan Securities Law*, 88 Mich B J 38, 40 (June 2009). Accordingly, this article provides no useful insight into the proper construction of the Securities Act.

The Legislature defined an investment advisor to be a "person that, for compensation, engages in the business of advising others . . . as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." MCL 451.2102a(e). The term excludes a "finder registered as a broker-dealer under this act." MCL 451.2102a(e)(*ix*). Similar to the situation with agents, a finder who goes beyond acting as a mere finder, as described under MCL 451.2102(i), may fall within the definition of an investment advisor or broker-dealer, or both and, as such, might have to register as both an investment advisor and a broker-dealer if there were no exceptions. The Legislature may have excluded a finder who is registered as a broker-dealer in order to avoid the duplicate registrations. In that way, a finder who registers as a broker-dealer will automatically be excluded from the definitions of both an agent and an investment advisor even if his or her activities would otherwise bring the finder within the definition of agent or investment advisor.

This construction has the added benefit of giving effect to the extra regulations for investment advisors who act as finders. With this understanding, a person who qualifies as an investment advisor would be able to provide services as a finder without having to be registered as a broker-dealer, which he or she would have to do if finders invariably fell within the definition of a broker-dealer. However, the investment advisor who elects to provide services as a finder would then be subject to the additional regulations provided under MCL 451.2502(2).

On appeal, Pransky asks this Court to *infer* that the Legislature intended to require finders to register as broker-dealers—even if their activities do not fall within the definition of a broker-dealer—on the basis of these exclusions and in the absence of a direct statutory requirement. But, as explained, the exclusions can be understood as a means to avoid duplicate registration for persons whose activities as a finder also include activities that cause them to fall within the definition of agent, investment advisor, or broker-dealer and, for that reason, these exclusions do not give rise to an inference that the Legislature intended to require finders to register as broker-dealers. There is no reasonable interpretation of this statutory scheme that leads to the conclusion that the Legislature intended to require finders to register as broker-dealers in every case. In order to reach Pransky's desired result, we would have to assume that the Legislature intended to include finders within the definition of broker-dealer or intended to require finders to register as broker-dealers, but forgot to include either provision in the statutory scheme. We would then have to correct the Legislature's error by reading Pransky's preferred requirement into the statute, which we cannot do. See *Recca*, 492 Mich at 187 (stating that courts are not permitted to supply a provision in a statutory scheme on the assumption that the Legislature unintentionally omitted it); *Book-Gilbert v Greenleaf*, 302 Mich App 538, 547; 840 NW2d 743 (2013) (stating that this Court cannot read into a statute what the Legislature did not include).

Finally, Pransky also relies on agency regulations which require finders to register. This Court normally defers to an agency's interpretation of an act that it was charged to implement when the act is silent or ambiguous. *Dep't of Labor and Economic Growth, Unemployment Insurance Agency v Dykstra*, 283 Mich App 212, 223-224; 771 NW2d 423 (2009). It is not evident that the Securities Act contains any ambiguity and the Legislature plainly made provision for the registration of persons under the act and chose not to include finders in the registration requirement. See MCL 451.2406(1). In any event, the current regulations were promulgated under the authority of the prior version of the Securities Act, which has since been

repealed, see 2008 PA 551, and the specific regulation that Pransky relies on, Mich Admin Code R 451.803(7), has also been rescinded (although it was still in force during the events at issue). See 2014 Mich Reg 15, p 128, 137. Therefore, we conclude that the regulations are not entitled to any deference and, indeed, provide no guidance whatsoever.

Examining the scheme as a whole and construing it according to its plain language, we conclude that the Legislature intended to differentiate finders from broker-dealers, agents, and investment advisors. Because the Legislature chose not to include finders within the definition of a broker-dealer (or any other category), and chose not to specifically require finders to register, a finder will not have to register as long as the finder constrains his or her activities to those stated under MCL 451.2102(i). A person serving as a finder whose activities go beyond those described under MCL 451.2102(i), however, must register as an agent, broker-dealer, or investment advisor, as the case may be. Further, the finder may avoid having to register under multiple categories by registering as a broker-dealer.

## C. APPLYING THE LAW

In her complaint, Pransky alleged four claims: rescission, misrepresentation/silent fraud, breach of the Securities Act, and conversion. She alleged that she was entitled to rescind the consulting agreement because the agreement required Falcon Group to provide services that it was illegal for it to provide without the requisite registration. As this Court has explained, a party may rescind an agreement made in violation of the Securities Act. *Michelson v Voison*, 254 Mich App 691, 697; 658 NW2d 188 (2003). If rescinded, the agreement is abrogated from the beginning and none of its provisions are applicable. *Id.* As for her misrepresentation and statutory claims, Pransky alleged that Falcon Group had a duty to disclose that it was illegal for it to perform the services required under the consulting agreement because it was not registered under the Securities Act and failed to inform her of that fact and breached the Securities Act by inducing her to enter into an illegal agreement without informing her that it was unregistered. Finally, she alleged that, because the consulting agreement was illegal, Falcon Group's exercise of dominion over her retainer was wrongful and amounted to a conversion.

As can be seen, none of Pransky's claims depends on Falcon Group's actions after entering into the consulting agreement.[14] Rather, each of her claims involves the legality of the consulting agreement. The legality of the consulting agreement, in turn, depends on whether Falcon Group could perform the services required under the agreement without being registered as a finder, broker-dealer, agent, or investment advisor. Because it is undisputed that Falcon Group is not registered under the Securities Act in any capacity and Pransky's claims do not depend on acts that it took after entering into the agreement, resolution of this case depends solely on the nature of the services that Falcon Group agreed to perform under the consulting agreement. If it could *in theory* perform the required services without being registered under the

---

[14] We offer no opinion as to whether Falcon Group might have violated the Securities Act during the performance of its obligations.

-12-

Securities Act, Pransky's claims must fail.[15]  If, however, Falcon Group had to be registered under the Securities Act in order to provide any of the services required under the agreement, the agreement would be illegal and Pransky's claims would remain viable.

In the first eight paragraphs of the consulting agreement, the parties agreed to various recitations, which they characterized as "background" to the main provisions.  Falcon Group, for example, recited that it was "engaged in the business of providing non-legal advice and consulting services to individuals and to business entities concerning, among other matters: mergers and acquisitions, marketing techniques and ideas, business opportunities, business operations, business management, financial issues and concerns, and business assets and liabilities."  The parties further recited that Pransky desired to retain Falcon Group's services because she had a "need for [Falcon Group's] advice and consulting services."  Finally, in this background section, Pransky agreed that she was not retaining Falcon Group to provide services as a lawyer, accountant, or real estate broker.

None of the first eight paragraphs required Falcon Group to provide illegal services. Falcon Group's statement of the services that it provides did not require it to perform any of those services and, even if it had, none of the services necessarily required it to provide advice or perform services involving securities.  One can provide general advice concerning mergers and acquisitions, marketing, business opportunities and operations, business management, financing, and assets and liabilities without becoming involved in an activity regulated under the Securities Act.

In paragraphs ten through twenty-four, the parties also agreed to several general provisions concerning the consulting agreement, which did not directly involve the provision of services.  Because these paragraphs did not require Falcon Group to perform a particular service, they do not implicate the Securities Act.  Pransky nevertheless relies on paragraph fifteen as evidence that Falcon Group agreed to provide services that require registration under that act. That paragraph requires Pransky to submit or direct "all communications regarding the financing, acquisition of, sale to and/or any transaction with or concerning the Business and all discussions or questions about the Business" to Falcon Group, rather than third-parties.  A plain reading of this paragraph shows that it does not require Falcon Group to do anything; it requires Pransky to submit the identified business communications to Falcon Group, presumably so it can provide her with advice or consultation on the communicated matter.  Therefore, this paragraph does not implicate the Securities Act.  The only paragraph in the consulting agreement that implicates the Securities Act is paragraph nine.

---

[15] The better course of action would be for finders acting pursuant to similar contracts to protect themselves by registering, at the very least, as broker-dealers; the line between a finder's activities and that of a broker-dealer, agent, or investment advisor is a thin one and persons acting under such contracts without being registered are inviting litigation.

The majority of paragraph nine addressed the compensation that Pransky would pay to Falcon Group for its services. Pransky first agreed to pay a "non-refundable Retainer of $50,000." She agreed to pay $20,000 on signing and the remainder with the "first investment money received." She also agreed to pay Falcon Group "10% of any monies" that Falcon Group "raises or causes to be raised" by Falcon Group "or through its connections." Pransky agreed to pay Falcon Group "3% of the financing obtained" "as a result of [Falcon Group's] efforts or connections," including financing from "a bank or financial institution introduced by [Falcon Group]." Finally, Pransky added a handwritten provision, which she labelled "9.e" to the section on compensation. That provision required Falcon Group to "provide non-legal advice and consulting services to [Pransky] in connection with identifying and procuring investors and financing for the Business."

None of these provisions required Falcon Group to advise Pransky or anyone else on the "value of securities or the advisability of investing in, purchasing, or selling securities" or otherwise serve as a financial planner. MCL 451.2102a(e). Similarly, the parties specifically agreed that they did not intend to "create or establish an agency . . . relationship" with the agreement. And there is nothing in the agreement that suggests that Falcon Group will serve as a representative for a broker-dealer. Because the parties agreed that Falcon Group was not authorized to serve as Pransky's agent, even if Pransky were an "issuer" for purposes of the Securities Act, see MCL 451.2102a(g), the agreement did not require Falcon Group to represent her "in effecting or attempting to effect purchases or sales of securities." MCL 451.2102(b). Therefore, Falcon Group could perform these services consistent with the agreement without necessarily falling within the definition of an investment advisor or agent.[16]

These provisions do unambiguously provide that Falcon Group would not receive any compensation beyond the retainer unless it finds investors or financing for Pransky. When read together and in light of Falcon Group's agreement to provide its service "in connection with identifying and procuring investors and financing", it is evident that Falcon Group agreed to act as a finder as that term is defined under MCL 451.2102(i). However, the provisions do not require Falcon Group to provide services beyond serving as a finder.

As we have already explained, the Legislature intended to differentiate finders from agents, investment advisors, and broker-dealers, and intended to exempt persons who act solely as finders from registration. Accordingly, because Falcon Group could perform under the consulting agreement as a finder without having to be registered, the consulting agreement was not on its face illegal under the Securities Act. The trial court did not err when it determined that Falcon Group could perform the consulting agreement without having to be registered under the Securities Act. Because each of Pransky's claims were premised on her belief that Falcon Group

---

[16] Of course, it remains possible that Falcon Group's actual performance of the agreement might involve activities that fall within these definitions, but Falcon Group's violation of the Securities Act while performing under the agreement does not render the agreement illegal on its face. Because Pransky's claims all involve the facially illegality of the agreement, her claims must be evaluated on the basis of the actual requirements of the agreement.

-14-

had to be registered under the act in order to perform the consulting agreement, the trial court also did not err when it concluded that those claims were not supported by the evidence and dismissed them under MCR 2.116(C)(10).

## III. ATTORNEY FEES

### A. STANDARDS OF REVIEW

Pransky next argues that the trial court erred when it amended the judgment in favor of Falcon Group to award Falcon Group its attorney fees. Specifically, she maintains that an award of attorney fees pursuant to a contractual provision constitutes damages, which must be asserted in a claim for breach of contract. Because Falcon Group did not assert a counterclaim, the trial court lacked the authority to award attorney fees under the agreement and any future claim is now barred by res judicata. She also argues that Falcon Group was not entitled to the award because the paragraph at issue only permits recovery if Falcon Group has to retain an attorney to "enforce" a "collection action." Because it hired its attorney to defend against Pransky's claims rather than to bring a collection action, she argues, Falcon Group did not establish its right to fees under the agreement.

This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). This Court also reviews de novo the proper interpretation and application of a contractual agreement. *Rory*, 473 Mich at 464.

### B. ANALYSIS

Michigan courts follow the "American Rule" with respect to the payment of attorney fees and costs. *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005). Under that rule, each party is responsible for his or her own attorney fees unless a statute or court rule specifically authorizes the trial court to order an award of attorney fees. *Id.* However, the parties to an agreement may include a provision respecting the payment of attorney fees within the agreement, which courts will enforce like any other term unless contrary to public policy. See *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007) (stating that a contractual provision for payment of reasonable attorney fees is judicially enforceable); *Wilson Leasing Co v Seaway Pharmacal Corp*, 53 Mich App 359, 366; 220 NW2d 83 (1974) (explaining that a contractual provision awarding attorney fees may be contrary to public policy if unrelated to the fair value of the services rendered). Because the authority to award attorney fees arises under the terms of the agreement, the attorney fees are a type of general damages. *Fleet*, 274 Mich App at 589-592 (holding that an award of attorney fees under a contractual provision constitutes general damages that need not be specifically pleaded). In order to obtain an award of attorney fees as damages under a contractual provision requiring such a payment, the party seeking payment must sue to enforce the fee-shifting provision like any other contractual term. See *Wilson Leasing*, 53 Mich App at 87-88 (stating that, in an action on a contract, the reasonable attorney fees allowed under the contract are an element of the debt owed); see also 25 CJS, Damages, § 85, pp 428-429 ("Contractual attorney's fees are recoverable only in a suit brought directly on the contract. Unlike statutorily permitted or rules-based attorney's fees, contractually based attorney's fees form part of the damages

claim."). That is, the party seeking the award of attorney fees as provided under the terms of an agreement must do so as part of a claim against the opposing party.

Here, Falcon Group did not file a counter-claim for damages under the consulting agreement. Instead, it moved for an award of attorney fees and relied on the consulting agreement as authority for the award. However, because the award of attorney fees was not authorized by statute or court rule, but was instead part of a contractual agreement, the trial court could only award the fees as damages on a claim brought under the contract. By entering an order requiring Pransky to pay Falcon Group's attorney fees, the trial court in effect entered a judgment against Pransky on a claim that was never brought. A trial court may not enter judgment on a claim that was not brought in the original action in the guise of a post-judgment proceeding. See, e.g., *Green v Ziegelman*, 282 Mich App 292, 303-304; 767 NW2d 660 (2009) (holding that the trial court erred when it allowed the plaintiffs to assert a claim for piercing the corporate veil in a post-judgment proceeding because that claim had not been brought in the original action). Therefore, the trial court lacked the authority to order Pransky to pay Falcon Group's attorney fees as damages for breach of the consulting agreement.

Pransky also asks this Court to conclude that Falcon Group would be barred under the doctrine of res judicata from subsequently filing suit to recover its attorney fees under the consulting agreement. We decline to address this issue because it is premature. It is unclear whether Falcon Group will try to recover its attorney fees by filing a contract claim. *Id.* at 305. And should it do so, whether Falcon Group could have brought a claim for contractual damages in this litigation is a matter best addressed by the trial court at that time. See *Adair v Michigan*, 470 Mich 105, 123-125; 680 NW2d 386 (2004) (discussing the same transaction test for res judicata). For similar reasons, we decline to address whether Falcon Group was a "prevailing party in [a] collection action," as required under paragraph twenty-one of the consulting agreement. The trial court should address the proper construction of that paragraph and whether the present litigation amounted to a collection action if and when the claim is properly before it.

## IV. CONCLUSION

The trial court did not err when it determined that Falcon Group could in theory perform its obligations under the consulting agreement without having to be registered as a broker-dealer, agent, or investment advisor under the Securities Act. It also did not err when it determined that the consulting agreement required Falcon Group to perform services as a finder, but that finders did not have to be registered under the Securities Act. Because Falcon Group could perform its obligations under the consulting agreement without being registered, the consulting agreement was not on its face illegal. The trial court properly dismissed Pransky's claims premised on the illegality of the consulting agreement under MCR 2.116(C)(10). Consequently, we affirm the trial court's order dismissing Pransky's claims.

The trial court, however, lacked the authority to award Falcon Group its attorney fees as damages under a contract claim because Falcon Group did not file a contract claim against Pransky. Accordingly, we vacate the trial court's order compelling Pransky to pay Falcon Group's attorney fees.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because neither Pransky nor Falcon Group prevailed in full, we order that neither party may tax costs. MCR 7.219(A).


/s/ Michael J. Kelly
/s/ Kurtis T. Wilder
/s/ Donald S. Owens