*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN SCHNEIDER and JULIE ANN
SCHNEIDER,

        Plaintiffs-Appellants,

v

CITY OF ORCHARD LAKE VILLAGE and
GERRY MCCALLUM,

        Defendants,

and

BARTON RACHWAL and ANDREA RACHWAL,

        Defendants-Appellees.

UNPUBLISHED
May 26, 2022

No. 357380
Oakland Circuit Court
LC No. 2018-164868-CH

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order awarding attorney fees and costs to defendants Barton Rachwal and Andrea Rachwal (the Rachwals). For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This litigation stems from a dispute between neighbors that involved alleged violations of applicable deed restrictions and local zoning ordinances. As this Court explained when this matter was previously before us:

> The Rachwals and plaintiffs own neighboring properties. The properties were originally part of a single tract that was subdivided into three parcels. At the time the properties were subdivided, the owner imposed covenants and restrictions to run with the land. Plaintiffs were involved in litigation with other neighbors

-1-

before the Rachwals purchased their lot in 2011. In litigation commenced in 2006, plaintiffs reached a settlement in 2009 with the Rachwals' predecessor, Matthew Flynn. That settlement order provided, in relevant part, that plaintiffs could enforce the existing deed restrictions in place for the property then owned by Flynn, but upon a sale or transfer of that property, plaintiffs would receive $50,000 from the closing proceeds and "release any rights to enforce the restrictions on the Flynn property," but "[i]f no payment is made as provided herein, [plaintiffs] shall continue to have such rights of enforcement."

The Rachwals purchased the Flynn property in 2011 and built their own home on the property. It is undisputed that the Rachwals did not pay plaintiffs $50,000 at the time of closing. Plaintiffs later informed the Rachwals in a letter that they could pay the $50,000 amount at a later time to obtain a release of the deed restrictions. . . .

\* \* \*

The Rachwals subsequently tendered the $50,000 amount. In lieu of accepting that payment, plaintiffs filed this lawsuit.

Although plaintiffs filed a lengthy 66-page complaint that asserted several different theories of relief, their claims involved two primary issues: (1) the Rachwals violated the deed restrictions applicable to their property, which plaintiffs were entitled to enforce under the 2009 settlement order, and (2) the Rachwals performed work on their property in violation of several ordinances, which the City failed to enforce. [*Schneider v City of Orchard Lake Village*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket No. 347202), pp 1-2 (alterations in original).]

In addition to the Rachwals, plaintiffs also "named the city of Orchard Lake Village (the City) and its building official, Gerry McCallum, as defendants." *Id*. at 1. The Rachwals moved for summary disposition, arguing in part that "the 2009 settlement allowed them to buy their way out of the deed restrictions," that they were released from the deed restrictions once they tendered payment of $50,000 pursuant to the 2009 settlement, that plaintiffs were "obligated to accept payment," and that plaintiffs waived their right to enforce the deed restrictions against the Rachwals by refusing to accept the payment. *Id*. at 2. The City and McCallum also moved for summary disposition. *Id*. at 3. The trial court granted defendants' motions for summary disposition and dismissed plaintiffs' claims. *Id*. This Court affirmed that decision. *Id*. at 1.

The 2009 settlement agreement is a central part of the dispute between plaintiffs and the Rachwals. As we explained in our prior opinion,

The 2009 settlement agreement, with regard to future enforcement of deed restrictions applicable to the Rachwals' property provided:

G. . . .It is understood that upon any sale, transfer of title of the Flynn property, other than the current foreclosing bank obtaining title through foreclosure, that the Schneiders shall be paid the sum

of Fifty Thousand and 00/100 ($50,000.00) Dollars at the closing from the closing proceeds and the sum of Thirty-Five Thousand and 00/100 ($35,000.00) Dollars shall be placed in escrow with the Title Company to satisfy the requirements of Flynn as set forth in Paragraph 2(B) herein, with any excess returned to Flynn. Upon receipt of such $50,000.00, Schneiders shall then release any rights to enforce the restrictions on the Flynn property, except as provided in the Amendment, Modification and Release of Declaration of Restrictions of Beath Woods. If no payment is made as provided herein, Schneiders shall continue to have such rights of enforcement.

The parties do not dispute that no payment was made or offered to plaintiffs when Flynn sold the property to the Rachwals in 2011. However, after the Rachwals acquired their property, they sent a letter to plaintiffs, advising them that they would not pay the $50,000 at that time and requesting that plaintiffs sign a release related to the deed restrictions, as plaintiffs had done for another neighbor. In the previously quoted written response of December 5, 2012, plaintiffs advised the Rachwals that the deed restrictions should remain in place, but further stated they would be "willing to release the restrictive covenants for the payment required in the amount of $50,000 . . ."

Plaintiffs' letter of December 5, 2012 is proof that they agreed to modify the original settlement order with respect to the timing of the payment by accepting the $50,000 payment after the closing to obtain release of the deed restrictions. Hence, plaintiffs waived their rights with regard to both the payment and to enforce the deed restrictions by rejecting the payment and filing this action instead. [*Id*. at 4 (ellipses in original).]

More specifically, this Court concluded that in agreeing "to modify the terms of the 2009 settlement agreement to extend the timeframe for making the specified $50,000 payment to obtain a release from the deed restrictions," it was "solely up to the Rachwals whether to invoke that provision" and the parties created no time limitation on the Rachwals' ability to avail themselves of the option to obtain the release. *Id*. at 5. When the Rachwals tendered the $50,000 payment in 2018, they fulfilled this condition precedent entitling them to a release of the deed restrictions from plaintiffs and plaintiffs had no right to choose to instead reject the payment and enforce the deed restrictions. *Id*. This Court also determined that plaintiffs' letter to the Rachwals operated to bar plaintiffs from enforcing the deed restrictions under the doctrine of promissory estoppel. *Id*. at 6.

After this Court affirmed the trial court's ruling granting summary disposition in the previous appeal, the Rachwals filed a motion in the trial court seeking attorney fees, costs, and sanctions. In their motion, the Rachwals argued that plaintiffs breached the terms of the 2009 settlement order, as modified by the agreement between plaintiffs and the Rachwals, by rejecting the Rachwals' payment and refusing to release the deed restrictions. The Rachwals maintained that a provision of the 2009 settlement order entitled them to an award of their actual attorney fees incurred as a result of plaintiffs' breach and that the trial court could also award fees pursuant to

MCR l.109(E) and MCL 600.2591 as sanctions for filing a frivolous action. The Rachwals sought $177,790.50 in fees and $929.79 in costs based on the trial court and appellate proceedings.

In response, plaintiffs argued that the Rachwals' motion should be denied because (1) they never filed a counterclaim or motion to recover their costs and attorney fees before plaintiffs' complaint was dismissed, and their current request was untimely because it had been too long since the complaint was dismissed; (2) the amounts requested were improper and excessive; (3) plaintiffs should be entitled to a $50,000 credit against any fee award; (4) plaintiffs' lawsuit was not frivolous; and (5) the court should not award fees without first conducting an evidentiary hearing.

The trial court initially denied the Rachwals' motion, reasoning as follows:

> Defendant's Motion seeks an Order enforcing a 2009 Consent Judgment which was filed in Case No. 2006-075134-CH, before the Hon. Colleen A. O'Brien. Because the 2009 Consent Judgment was not entered by this Court in this case, the Court finds that it is most appropriate for Defendant to seek enforcement of the 2009 Consent Judgment in the original case, Case No. 2006-075134-CH, now before the successor to the Hon. Colleen A. O'Brien's docket, the Hon. Cheryl A. Matthews.

On reconsideration, however, the trial court found that it had erred by declining to rule on the Rachwals' motion for attorney fees, costs, and sanctions. The trial court granted the Rachwals' motion for reconsideration, granted attorney fees and costs to the Rachwals pursuant to the 2009 settlement order, and denied the Rachwals' request for sanctions under MCR 1.109 and MCL 600.2591. The court explained its reasoning as follows:

> As to Defendants' claim for fees pursuant to the 2009 Order, Defendants argue that they are entitled to attorney fees pursuant to Section 3(H) of [the] 2009 Order which provides as follows:
>
>> H. It shall be a condition of the Judgment/order that if any party fails to perform the obligations that are set forth and/or breaches the terms of the Settlement Agreement contained within the Order . . . the Circuit Court shall have the power to order specific performance of those covenants, conditions, and performance of the agreements . . . and that the prevailing party would be entitled to all consequential damages incurred and actual attorney fees as a result of the breach.
>
> As stated above, the Court, by virtue of its 2018 Opinion & Order, found Plaintiffs to be in breach of the 2009 Order, specifically Section 2(G), by failing to accept $50,000 to release the deed restrictions, as tendered by Defendants. The Court of Appeals affirmed this ruling by virtue of its May 14, 2020 Opinion & Order.
>
> First, the Court finds that Defendants are entitled to seek fees under the 2009 Order without filing a separate lawsuit. The Court finds this case distinguishable from *Pransky v Falcon Group, Inc*, 311 Mich App 164[; 874 NW2d 367] (2015),

-4-

cited by Plaintiffs, because the *Pransky* case dealt with a contract rather than a consent judgment. The 2009 Order is not a contract. "Judgments by consent . . . are entered by sanction and order of the court, exercising a judicial function and power, and therefore are not to be treated as mere contracts, but, to the contrary, as adverse judgments." *Trendell v Solomon*, 178 Mich App 365, 368[; 443 NW2d 509](1989) (internal citations omitted).

The Court also finds that Defendants' Motion is not untimely. See *Giannetti v Bros Construction Co, Inc. v City of Pontiac*, 152 Mich App 648, 656[; 394 NW2d 59] (1986) (holding that waiting 55 days after resolution of an appeal was not an overly long time for the prevailing party to file a motion for attorney fees.)

Under the plain language of the 2009 Order, Defendants are entitled to "actual attorney fees as a result of the breach." Therefore, Defendants are entitled to all fees incurred as a result of Plaintiffs' refusal to accept the $50,000 payment by Defendants to release the deed restrictions. Defendants offered to pay Plaintiffs $50,000 on March 13, 2018, and this lawsuit was filed on April 4, 2018. Therefore, the Court finds that the breach occurred on April 4, 2018, with Plaintiffs' filing of this lawsuit acting as a rejection of Defendants' offer of the $50,000 payment.

Therefore, the Court shall only award attorney fees incurred after April 4, 2018, as the plain language of the 2009 Order indicates that Defendants are entitled only to "actual attorney fees **as a result of the breach**." (emphasis added). In reviewing the attached invoices, the Court finds that Defendants seek $15,961.38 in fees prior to the initiation of Plaintiffs' lawsuit. The Court subtracts this amount from the total award because such fees were not incurred "as a result of" the breach, i.e., the refusal to accept the $50,000 payment.

The plain language of the 2009 Order requires the Court to grant Defendants' their *actual* attorney fees; however, the Court also finds that the fees incurred as a result of Plaintiffs' breach are reasonable. In determining the reasonableness of requested attorney fees, "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services." *Smith v Khouri*, 481 Mich 519, 530[; 751 NW2d 472] (2008). To do so, courts generally rely "on data contained in surveys such as the Economics of Law Practice Surveys that are published by the State Bar of Michigan." *Id*. "The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281[; 884 NW2d 257] (2016). Finally, the court must consider all of the following nonexclusive factors (along with any other relevant factors) "to determine whether an up or down adjustment is appropriate":

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id*. at 281-282.]

In examining the relevant invoices, the Court notes that Defendants' attorneys assigned work to different members of their firm, each with varying levels of experience and varying rates. Defendants' attorneys attempted to reduce the cost of the work by assigning it, where appropriate, to associates and paralegals with lower hourly rates. The Court finds that the rates were reasonable pursuant to the applicable 2017 Economics of Law & Practice.

In their Response to this Motion, Plaintiffs argue that the Court should exclude the cost of appellate attorney fees as well as fees incurred for filing this Motion for Attorney Fees & Sanctions. The Court disagrees. Again, the plain language of the 2009 Order states that Defendants are entitled to their "**actual** attorney fees **as a result of the breach**." (emphasis added). This litigation ensued because Plaintiffs breached the 2009 Order by failing to accept the $50,000 payment from Defendants to release the deed restrictions. The litigation continued after it was dismissed because of Plaintiffs' appeal. While Plaintiffs had a right to seek an appeal, they were aware of the plain language in the 2009 Order. The Court finds that reimbursement for fees incurred by virtue of the appeal and the Motion for Attorney Fees & Sanctions is proper under the 2009 Order because fees related to the appeal and this Motion were incurred only because of Plaintiffs' breach.

Plaintiffs also argue that they are entitled to a $50,000 setoff of attorney fees because they never actually received the $50,000 to release the deed restrictions. The Court disagrees. The Court finds that by virtue of this Court and the Court of Appeals' decisions, Plaintiffs waived their entitlement to the funds by wrongly rejecting them.

The Defendants' Request for Sanctions Pursuant to MCR 1.109 and MCL 600.2591

The remainder of Defendants' Motion seeks sanctions pursuant to MCR 1.109 and MCL 600.2591. The Court is not inclined to award sanctions pursuant to MCR 1.109 and MCL 600.2591 because the Court finds that this lawsuit was not frivolous. The Court agrees with Plaintiffs that they had a good faith belief that their claims would be successful.

Conclusion

In sum, the Defendants' Motion for Reconsideration is granted. The Defendants' Motion for Attorney Fees & Sanctions is granted in part and denied in part. Defendants seek $177,790.50 in attorney fees and $929.79 in costs. Consistent with this Opinion, the Court finds that pursuant to the 2009 Order, the Defendants are entitled to $161,829.12 in attorney fees and $929.79 costs. The Court declines to award sanctions. [Ellipses and seventh alteration in original.]

II. ANALYSIS

On appeal, plaintiffs first argue that the trial court erred by awarding attorney fees[1] to the Rachwals pursuant to the 2009 settlement order because the Rachwals failed to properly and timely raise their claim for attorney fees and costs. Plaintiffs contend that the fee-shifting provision at issue in the consent judgment is treated as a contractual fee-shifting provision, that a claim for attorney fees pursuant to a contractual fee-shifting provision is considered a claim for damages under the contract, and that the Rachwals were therefore required to assert their damages claim in the trial court before the trial court dismissed the action. Plaintiffs maintain that because the Rachwals failed to timely raise their damages claim by way of a counterclaim, the Rachwals were barred from recovering attorney fees under the consent judgment.[2]

---

[1] Although the phrasing of plaintiffs' questions presented suggests that they intended to challenge the trial court's ruling regarding both attorney fees and costs, plaintiffs completely neglected to include, much less develop, *any* argument or legal basis for concluding that the trial court's ruling regarding costs was erroneous. Instead, plaintiffs' argument focuses entirely on the propriety of the trial court's ruling regarding attorney fees. We therefore confine our analysis solely to the issue of attorney fees as well, and we find that any challenge to the trial court's ruling regarding costs has been abandoned by plaintiffs. "[A] mere statement without authority is insufficient to bring an issue before this Court. It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

[2] The Rachwals do not claim to have raised the issue that they were entitled to attorney fees based on the 2009 order any earlier than their post-appeal motion that is the subject of the instant appeal. Thus, there is no dispute about the time that the Rachwals first raised the issue of being entitled to attorney fees under the 2009 order as the prevailing party.

"A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689; 828 NW2d 400 (2012). "This Court reviews the trial court's findings of fact for clear error, and questions of law de novo." *Id*. at 690. "This Court also reviews de novo the proper interpretation and application of a contractual agreement." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015).

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs." *Id*. Accordingly, "as a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception." *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007); see also *Pransky*, 311 Mich App at 193-194. For example, attorney fees may be recoverable pursuant to an applicable statute, court rule, or contractual agreement. *Pransky*, 311 Mich App at 194; *Fleet Business Credit*, 274 Mich App at 589.

Here, the trial court awarded attorney fees and costs to the Rachwals pursuant to the 2009 settlement order. "Judgments entered pursuant to the agreement of parties are of the nature of a contract." *Holmes v Holmes*, 281 Mich App 575, 595; 760 NW2d 300 (2008) (quotation marks and citation omitted). "[A] settlement agreement . . . is a contract and is to be construed and applied as such." *In re Lobaina Estate*, 267 Mich App 415, 418; 705 NW2d 34 (2005) (quotation marks and citation omitted). "[T]he parties to an agreement may include within the agreement a provision respecting the payment of attorney fees, which courts will enforce like any other term unless contrary to public policy." *Pransky*, 311 Mich App at 194. "Contractual provisions for payment of reasonable attorney fees are judicially enforceable," and "a contractual clause providing that in the event of a dispute the prevailing party is entitled to recover attorney fees is valid." *Fleet Business Credit*, 274 Mich App at 589 (quotation marks and citation omitted).

"Because the authority to award attorney fees arises under the terms of the agreement, the attorney fees are a type of general damages." *Pransky*, 311 Mich App at 194. As a species of damages, attorney fees that arise under the terms of an agreement are distinguishable from attorney fees that are authorized by statute or court rule. *Id*. "In order to obtain an award of attorney fees as damages under a contractual provision requiring such a payment, the party seeking payment must sue to enforce the fee-shifting provision, as it would for any other contractual term"; i.e., "the party seeking the award of attorney fees as provided under the terms of an agreement must do so as part of a claim against the opposing party." *Id*. at 194-195.

In *Pransky*, the plaintiff, Jaime Pransky, sued the defendant, Falcon Group, in an effort to rescind a consulting agreement the parties had executed and recoup the retainer fee she had paid to Falcon Group as part of the agreement. *Id*. at 167-168, 169-170. The trial court granted Falcon Group's motion for summary disposition and dismissed all of Pransky's claims. *Id*. at 172. The trial court also granted Falcon Group's subsequent motion for costs and attorney fees, ordering Pransky to pay more than $6,800 in attorney fees to Falcon Group, pursuant to a provision in the consulting agreement. *Id*. On appeal, this Court affirmed the dismissal of Pransky's claims but vacated the trial court's order compelling Pransky to pay Falcon Group's attorney fees. *Id*. at 168. This Court held that because attorney fees constitute a type of damages when they are only authorized to be awarded by a contractual provision, and Falcon Group did not file a counterclaim seeking damages under the contract, the trial court did not have the authority to award attorney

fees to Falcon Group based on the consulting agreement. *Id*. at 168, 194-195. This Court explained:

> Falcon Group did not file a counterclaim for damages under the consulting agreement. Instead, it moved for an award of attorney fees and relied on the consulting agreement as authority for the award. However, because the award of attorney fees was not authorized by statute or court rule, but was instead part of a contractual agreement, the trial court could only award the fees as damages on a claim brought under the contract. By entering an order requiring Pransky to pay Falcon Group's attorney fees, the trial court in effect entered a judgment against Pransky on a claim that was never brought. A trial court may not enter judgment on a claim that was not brought in the original action in the guise of a postjudgment proceeding. Therefore, the trial court lacked the authority to order Pransky to pay Falcon Group's attorney fees as damages for breach of the consulting agreement. [*Id*. at 195 (citation omitted).]

Here, the Rachwals also did not file a counterclaim for damages generally, or attorney fees in particular, pursuant to the 2009 settlement order but instead filed a motion after the conclusion of the prior appeal seeking attorney fees and costs based on the fee-shifting provision in the settlement order. Accordingly, the trial court erred by ordering plaintiffs to pay the Rachwals' attorney fees because the trial court had no authority to enter judgment against plaintiffs on a claim that was never brought. *Id*.

The trial court attempted to avoid this result by citing *Trendell v Solomon*, 178 Mich App 365, 368; 443 NW2d 509 (1989), for the proposition that consent judgments are to be treated as "adverse judgments" and not "mere contracts." (Quotation marks, citation, and emphasis omitted.) However, the only issue actually before the Court in *Trendell* was the "distinction between a consent judgment and a litigated judgment." *Trendell*, 178 Mich App at 368. The defendant argued in *Trendell* "that a consent judgment should be treated as nothing more than a settlement contract and that, since there was a breach of the terms of the consent judgment . . . the proper remedy is rescission of the consent judgment and reinstatement of the action." *Id*. at 367. This Court held that a consent judgment "possesses the same force and character as a judgment rendered following a contested trial or motion." *Id*. at 369. In reaching this conclusion, this Court reasoned that the "accepted rule is that the failure of a party to perform under a consent judgment does not void the judgment" and that "[b]ecause a consent judgment is a judicial act, the proper remedy is enforcement where one of the parties does not comply with its terms." *Id*. The *Trendell* Court concluded that the trial court had not abused its discretion by enforcing the judgment and denying the defendant's motion to set it aside. *Id*. at 370.

The rule that a consent judgment has the same force and effect as a "litigated" judgment does not conflict with the rule that the terms of a judgment entered pursuant to the parties' consent is enforced by construing it as a contract. Moreover, although *In re Lobaina Estate*, *Holmes*, *Pransky*, and *Fleet Business Credit*, are binding precedent, *Trendell* is not. MCR 7.215(J)(1). Hence, the trial court erred by concluding that the 2009 settlement order was not to be treated as a contract for purposes of determining whether the trial court had the authority to order plaintiffs to pay the Rachwals' attorney fees. Because the Rachwals did not file a counterclaim seeking attorney fees under the 2009 consent judgment, the trial court had no authority order the attorney

fee award. *Pransky*, 311 Mich App at 194-195. We therefore vacate the trial court's order to the extent that it ordered plaintiffs to pay the Rachwals' attorney fees. We affirm in all other respects.

Based on this conclusion, as well as the fact that the trial court already denied the Rachwals' motion for sanctions that was predicated on the alleged frivolousness of plaintiffs' action, plaintiffs' additional arguments that the Rachwals' motion for attorney fees was also untimely and barred under the principles of law applicable to motions seeking sanctions for a frivolous action are moot because addressing these arguments would not permit this Court to grant plaintiffs and further relief and would not have any practical effect. A matter is moot if rendering judgment on it "for any reason, cannot have any practical legal effect upon a then existing controversy." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 580; 957 NW2d 731 (2020) (quotation marks and citation omitted). Furthermore, "[a]n issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117, 119 (1998). "As a general rule, an appellate court will not decide moot issues." *Id*.

Plaintiffs' arguments that the Rachwals were limited to recovering only reasonable attorney fees, that plaintiffs were entitled to an evidentiary hearing on the reasonableness of the attorney fees sought by the Rachwals, and that plaintiffs are entitled to a $50,000 credit "against the Rachwals['] claim for fees," are also moot in light of our conclusion that the trial court did not have the authority under these circumstances to order plaintiffs to pay the Rachwals' attorney fees under the 2009 consent judgment. *League of Women Voters of Mich*, 506 Mich at 580; *B P 7*, 231 Mich App at 359. We therefore decline to address those arguments. *B P 7*, 231 Mich App at 359.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219.


/s/ Stephen L. Borrello
/s/ Noah P. Hood