*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TROY TAYLOR and SHERYL TAYLOR,

      Plaintiffs,

v

WASTE MANAGEMENT OF MICHIGAN, INC.,

      Defendant/Third-Party Defendant-
      Appellant,

and

WASTE MANAGEMENT NATIONAL
SERVICES, INC., and WM RECYCLE AMERICA,
LLC,

      Defendants/Cross-Plaintiffs-
      Appellants,

and

WASTE MANAGEMENT, INC.,

      Defendant,

and

RAA TRUCKING, LLC,

      Defendant/Cross-Plaintiff,

v

NORTHERN LOGISTICS, INC.,

      Third-Party Defendant/Cross-
      Defendant-Appellee.

UNPUBLISHED
September 21, 2023

No. 361455
Kalamazoo Circuit Court
LC No. 2018-000041-NI

-1-

Before:  SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Troy Taylor was employed by Northern Logistics to drive a trailer that collected and transported recyclable cardboard for WM Recycle America.  On November 13, 2015, Troy was injured when the trailer's lift-floor wall failed.  Troy sued Waste Management National Services, Waste Management Michigan, and WM Recycle America for his injuries, and those corporations moved for indemnification from Northern Logistics.  Northern Logistics argued that the Agreement had expired on February 28, 2015, before Troy was injured on November 13, 2015, and, thus, the indemnification clause was not controlling.

The trial court dismissed Northern Logistics, holding that Waste Management of Michigan, Waste Management National Services, and WM Recycle America were not subject to indemnification by Northern Logistics.  We reverse the trial court's grant of summary disposition, vacate the trial court's award of attorney fees, and remand for proceedings consistent with this opinion.

## I.  BACKGROUND

Northern Logistics agreed to transport recyclable material to WM Recycle America under a Master Transportation Services Agreement that Northern Logistics entered into with Waste Management National Services.  The Agreement stated that it was governed by the laws of Texas and it would expire on February 28, 2015, unless it was "extended by mutual written consent of the parties."  After this date passed, however, the parties continued to operate under the Agreement without any written extension.  This included WM Recycle America continuing to pay Northern Logistics for the continued services provided by Troy, under the same rate contained in the Agreement.

The Agreement also contained an indemnification clause which provided:

15. INDEMNIFICATION

A. Subject to Section 15.B. below, each party hereto (an "Indemnifying Party") covenants and agrees to defend (with counsel reasonably acceptable to the Indemnified Party), protect, indemnify, hold harmless and render whole the other party, its parents, *subsidiaries* and *affiliates*, and their respective officers, directors and employees ("Indemnified Parties") from and against all damages, claims, demands or causes of action and any liability, cost, fine, environmental remediation and response cost, penalty and/or expense, including but not limited to reasonable attorney's fees and expenses ("Damages"), incurred by each such Indemnified Party arising or resulting from, or caused by, violation of any laws or regulations by the Indemnifying Party, the breach of this Agreement by the Indemnifying Party, or the Indemnifying Party's, its subcontractors' or agents' (or their respective

shareholders', partners', officers', directors' or employees') negligent acts or omissions under this Agreement or relating to the Services provided hereunder.

B. CARRIER also hereby expressly agrees to indemnify, defend and hold harmless COMPANY, its parents, *subsidiaries* and *affiliates* and their respective officers, directors and employees, from and against any damages arising out of or resulting from any personal injury, death, or property damage suffered by any person (including employees and persons deemed by operation of law or contract to be an employee), agent, invitee or visitor of CARRIER while at the Origin or Destination Locations or suffered in connection with, or related to or arising from, the Services, even if the cause of such personal injury, death or property damage is the sole or concurrent negligence of COMPANY or any other Indemnified Party, excepting only such personal injury, death or property damage that is caused solely by the willful misconduct or gross negligence of COMPANY or any other Indemnified Party. The indemnity obligation described in this section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the CARRIER under any Workmen's Compensation Acts, Disability Acts or other Employee Benefit Acts, nor shall the indemnity obligation described in this section be limited in any way due to any limitation in the insurance coverages carried by CARRIER and its subcontractors.

C. The indemnity obligations created by this section shall survive the expiration or termination for any reason of this Agreement. [emphasis added.]

During his deposition, a corporate representative of Waste Management National Services testified that Waste Management National Services and WM Recycle America were affiliates. The plant manager for WM Recycle America testified during his deposition that Waste Management National Services, Waste Management of Michigan, and WM Recycle America were companies under the same corporate umbrella. The plant manager also stated that WM Recycle America would process the material that was transported by Waste Management of Michigan.

Additionally, the treasurer of Waste Management, Inc., provided an affidavit that she was familiar with the subsidiaries of Waste Management, Inc., and that Waste Management of Michigan and Waste Management National Services were owned by Waste Management Holdings which was in turn owned by Waste Management, Inc. Further, WM Recycle America was owned by Recycle America Holdings, which was also owned by Waste Management Holdings.

Waste Management National Services, Waste Management of Michigan, WM Recycle America, and Northern Logistics all moved for summary disposition. The trial court held that there was not sufficient evidence to show that Waste Management of Michigan and WM Recycle America were affiliates of Waste Management National Services, and the Agreement had expired before Troy was injured. The trial court dismissed the claims for indemnification from Northern Logistics, and it awarded Northern Logistics attorney fees because the Agreement stated that "[i]n the event of litigation with respect to matters arising under this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and other costs of such litigation."

Waste Management National Services, Waste Management of Michigan, and WM Recycle America now appeal.

## II. ANALYSIS

The trial court did not specify whether it granted Northern Logistics summary disposition under MCR 2.116(C)(8) or (C)(10), but the trial court considered documentation outside of the pleadings when it decided the motion. When, as here, the trial court grants a motion for summary disposition brought under both MCR 2.116(C)(8) and (C)(10), and it is clear that the trial court looked beyond the pleadings, this Court "will treat the motions as having been granted pursuant to MCR 2.116(C)(10)," which "tests whether there is factual support for a claim." *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (cleaned up). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman*, 332 Mich App at 632.

## A. AFFILIATES

Appellants argue that the trial court erred by holding that Waste Management of Michigan and WM Recycle America were not affiliates of Waste Management National Services and, thus, not included in the Agreement's indemnification clause. The Agreement stated that Northern Logistics agreed to "protect, indemnify, hold harmless and render whole the other party, its parents, *subsidiaries and affiliates*, and their respective officers, directors and employees ("Indemnified Parties") from and against all damages, claims, demands or causes of action and any liability." (Emphasis added.)

"The goal of contract interpretation is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Bayberry Group, Inc v Crystal Beach Condo Assoc*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (cleaned up). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id.* (cleaned up). "Ultimately, this Court enforces clear and unambiguous language as written." *Id.*

The Agreement is governed by Texas law, and contracts are interpreted similarly under Texas law.

> When interpreting a written contract, the prime directive is to ascertain the parties' intent as expressed in the instrument. [O]bjective, not subjective, intent controls, so the focus is on the words the parties chose to memorialize their agreement. But language is nuanced, and meaning is often context driven. Contract language is thus construed in its lexical environment, which may include objectively determinable facts and circumstances that contextualize the parties' transaction.

Surrounding facts and circumstances can inform the meaning of language but cannot be used to augment, alter, or contradict the terms of an unambiguous contract. [*URI, Inc v Kleberg Co*, 543 SW3d 755, 757-758 (Tex, 2018) (quotation marks and citation omitted; alteration in original).]

The term "affiliate" was not defined in the Agreement. "Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010) (cleaned up). See also *Eckland Consultants Inc v Ryder Stilwell, Inc*, 176 SW3d 80, 88 (Tex App, 2004) (stating that if the term "affiliate" is not defined in the contract, "its ordinary meaning must be used" and using *Black's Law Dictionary* and *Webster's Third New International Dictionary* to define "affiliate"). *Black's Law Dictionary* (11th ed) defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."

In this case, WM Recycle America paid the invoices submitted by Northern Logistics under the rates that were agreed upon in the Agreement that Northern Logistics had with Waste Management National Services. Further, a corporate representative for Waste Management National Services testified that Waste Management National Services and WM Recycle America were affiliates, and the plant manager for WM Recycle America testified that Waste Management National Services, Waste Management of Michigan, and WM Recycle America were all under the same corporate umbrella. The treasurer's affidavit also provided uncontroverted evidence that Waste Management National Services, Waste Management of Michigan, and WM Recycle America were all subsidiaries of the same corporate structure, and all affiliated.

Northern Logistics argued that the trial court could not consider the treasurer's affidavit because it was inadmissible hearsay, but this ignores that appellants were not required to present the foundation for the admission of the affidavit during summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009) (stating that the plaintiff was not required to lay the foundation for the admission of invoices in order for the court to consider them on a motion for summary disposition). Further, our Supreme Court has held that the evidence presented in opposition of a motion for summary disposition "need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content . . ." *Maiden v Rozwood*, 461 Mich 109, 124 n 6; 597 NW2d 817 (1999) (quotation marks and citation omitted; ellipsis in original).

The trial court erred because this evidence created a genuine issue of material fact that Waste Management of Michigan and WM Recycle America were affiliates of Waste Management National Services. Further, the trial court failed to consider that even if there was not an affiliation, Waste Management National Services was a party to the Agreement with Northern Logistics, and, as a result, may be entitled to indemnification under the terms of the Agreement.

## B. EXTENSION

Next, appellants argue that the trial court erred by finding that there was no genuine issue of material fact that the Agreement had expired at the time of Troy's injury.

The plain language of the Agreement states that it was to expire on February 28, 2015, unless there was a written extension by the parties. There is no dispute, however, that Troy continued to transport materials for WM Recycle America, and that Northern Logistics continued to send invoices for Troy's services to WM Recycle America under the rate stated in the Agreement, after the expiration date.

Our Supreme Court recognized that the parties to a written contract may extend that contract through their conduct as an implied contract. *Paxson v Cass Co Rd Comm*, 325 Mich 276, 280-281; 38 NW2d 315 (1949). Moreover, in *Siber & Calicutt, Inc v La Gloria Oil & Gas Co*, 66 SW3d 340, 347 (Tex App, 2001), the Texas Court of Appeals stated that "[e]ven when an exact date of performance is specified in the contract, this provision can be waived by the parties." That court held that "[a]n extension of time for performance may be implied as well as express." *Id*. "When the exact duration of an extension of time is not express, the law will imply a reasonable time." *Id*. Further, "[t]he extension of a term of a contract is the extension of all of its provisions." *Id*.

The parties' performance did not change throughout the course of their relationship, even after the Agreement's expiration date. Thus, there is a genuine issue of material fact whether the parties' conduct extended the Agreement. See *id*. (holding that because the parties "continued to perform under the July 1, 1991 maintenance contract even after it had expressly expired on July 1, 1992" and the extension of the contract by letter Agreement on November 15, 1993, was sufficient evidence to support the trial court's finding that the maintenance contract was in effect on April 28, 1993, when the incident occurred).

## C. ATTORNEY FEES

Lastly, appellants argue that the trial court erred in awarding Northern Logistics attorney fees. Because we conclude that the trial court erred in granting Northern Logistics summary disposition, it follows that it is premature to conclude that Northern Logistics is the prevailing party for the purpose of attorney fees under this Agreement. See *Rohrmoos Venture v UTSW DVA Healthcare, LLP*, 578 SW2d 469, 483 (Tex, 2019); *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015).

## III. CONCLUSION

The trial court erred when it held that there was not sufficient evidence to conclude that Waste Management National Services, Waste Management of Michigan, and WM Recycle America were affiliated. Further, the trial court erred when it held that there was not continuing performance sufficient to extend the Agreement past its expiration date. The evidence on the record creates a genuine issue of material fact for both issues.

For this same reason, we vacate the trial court's grant of attorney fees to Northern Logistics because it cannot be the prevailing party when summary disposition was granted in error.

Appellants also argue on appeal that summary disposition should have been granted in their favor. Given that we conclude that there are genuine issues of material fact, however, we decline to address appellants' additional issues and instead remand the matter to the trial court for further proceedings consistent with this opinion.

The order granting summary disposition for Northern Logistics is reversed, the order granting Northern Logistics attorney fees is vacated, and we remand this matter for further proceedings consistent with his opinion.  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney