*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTAN NOBLETT,

      Plaintiff-Appellee,

v

BOYNE AREA GYMNASTICS, INC.,

      Defendant-Appellant.

UNPUBLISHED
April 16, 2025
9:14 AM

No. 368791
Charlevoix Circuit Court
LC No. 2022-088827-CZ

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

Defendant Boyne Area Gymnastics, Inc., the former employer of plaintiff Kristan Noblett, appeals as of right the trial court's final order granting plaintiff $22,075.00 in attorney fees and $1,011.14 in costs. On appeal, defendant argues that the trial court erred by (1) entering an order essentially granting plaintiff partial summary disposition pursuant to MCR 2.116(C)(10), and (2) then by entering a subsequent order granting plaintiff attorney fees and costs. We affirm in part, reverse in part, and remand to that court for further proceedings.

## I. FACTS

On August 19, 2022, plaintiff filed the instant complaint against defendant, alleging as follows. On December 4, 2020, plaintiff initiated a separate, related case in the trial court against defendant for wrongful termination. During the course of that litigation, plaintiff received unemployment benefits through the Unemployment Insurance Agency (UIA), and her entitlement to those benefits was a contested issue between the parties. Eventually, on August 23, 2021, the parties entered into a settlement agreement whereby each party agreed to release the other party from "any and all actions, causes of action, [and] claims . . . ." The settlement agreement also prohibited the parties from disparaging each other. Despite this provision, on March 30, 2022, defendant submitted documents to an administrative law judge (ALJ) indicating that plaintiff was

-1-

terminated because she improperly diverted customers and withheld money.[1]  Further, in the following months, defendant submitted similar documentation indicating that plaintiff engaged in such improper conduct and, therefore, she was not entitled to unemployment benefits.  According to plaintiff, defendant's actions violated the settlement agreement by making these statements about her.  Plaintiff sought compensatory damages for those alleged violations, an injunction prohibiting defendant from contesting her entitlement to unemployment benefits, and an injunction against defendant from further committing other violations of the settlement agreement.

On February 27, 2023, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10).  In the accompanying brief, defendant set forth the following timeline of events, which was supported by documentary exhibits attached thereto:

On September 25, 2020, defendant terminated plaintiff.

On or about September 29, 2020, plaintiff filed for unemployment benefits.

On October 1, 2020, the UIA sent a "Request for Information" to defendant.

On October 12, 2020, defendant responded to the Request for Information, asserting that plaintiff was not entitled to benefits because she was terminated for misconduct.

On December 1, 2020, the UIA issued a "Notice of Determination" finding that plaintiff was entitled to receive unemployment benefits.

On December 4, 2020, plaintiff sued defendant for wrongful termination. That case was settled on August 23, 2021, in accordance with the parties' settlement agreement.

On December 24, 2020, defendant protested the Notice of Determination.

On December 15, 2021, the UIA issued a "Notice of Redetermination" reversing its earlier Notice of Determination and finding that plaintiff was not entitled to receive unemployment benefits because "[m]isconduct in connection with the work has been established."

On January 5, 2022, plaintiff appealed the Notice of Redetermination to an ALJ.

On March 18, 2022, the Michigan Office of Administrative Hearings and Rules (MOAHR) mailed a hearing notice to defendant, explaining that the parties would have an upcoming hearing before an ALJ.  The hearing notice stated, "If you

---

[1] Specifically, defendant asserted that plaintiff was terminated because of (1) "Willful disregard of a verbal [and] written order," (2) "Lied to customer [and] misrepresented employer," and (3) "Took money from employer."  Defendant did not fully substantiate any of those claims in its assertions.

wish to offer any papers or records relevant to the case, including any records (writings, recordings, or photographs) previously sent to the Unemployment Insurance Agency, **YOU MUST SEND THEM TO THE JUDGE AND THE OTHER PARTY** in time to ensure the documents are received before the date of the scheduled hearing."

On or about March 30, 2022, defendant submitted documentation to the ALJ indicating that plaintiff was terminated for misconduct. Defendant submitted similar documentation in the following months.

Critically for our purposes, the August 23, 2021 settlement agreement between the parties provided, in relevant part:

1. In consideration of the payment in the amount of $10,000.00 from BAG [defendant] to Noblett [plaintiff], the parties agree to mutually release and forever discharge each other, their employees, agents, attorneys and representations, from any and all actions, causes of action, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore may have been or which hereafter may be sustained by either party in consequence of all matters which were raised, or could have been raised, through amendments to pleadings or the filing of additional pleadings in the aforementioned lawsuit.

\* \* \*

3. This release extends and applies to, and also covers and includes, all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences thereof, as well as those now disclosed and known to exist. The provisions of any state, federal, local or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries or damages, which are unknown or unsuspected to exist at the time, to the person, executing such release, are hereby expressly waived.

4. The parties hereto mutually agree that they will not, in any way, disparage, demean, make negative comments about, or take negative action against the other or their agents, employees, representatives or others associated with the transaction which is the subject of this Agreement or assist in any way other individuals or entities attempting to make or making such a claim of any type. This prohibition includes but is not limited to making or assisting in the making of any disparaging, demeaning, or negative comments of any type in social media or print media.

5. It is further understood and agreed that this Settlement is in compromise of a doubtful and disputed claim, and that the payment as set forth herein is not to be construed as an admission of liability on the part of either party by whom liability is expressly denied.

\* \* \*

9. This Agreement contains provisions related to confidentiality and non-disparagement and other non-monetary obligations and the violation of those provisions may cause irreparable injury to the parties, the amount of which will be extremely difficult, if not impossible, to determine and may not be adequately compensable by monetary damages alone. Accordingly, the parties shall be entitled to injunctive and other equitable relief only in Charlevoix County, Michigan, to enforce this Agreement or make claims under the Agreement and, if successful, will be entitled to receive from the other party all costs associated with its enforcement (including actual attorneys' fees, disbursement and costs).

Defendant argued that it was entitled to summary disposition because the settlement agreement "contains absolutely no reference to [plaintiff's] unemployment claim," so it was not prohibited from continuing to challenge her claim for unemployment benefits before the UIA and the ALJ. In fact, according to defendant, it had a "statutory obligation to participate in UIA proceedings," so it was legally required to provide documentation explaining why plaintiff was terminated. Accordingly, defendant argued, the trial court should dismiss the case and award it attorney fees and costs because plaintiff filed a frivolous complaint.

On March 10, 2023, plaintiff filed a combined response to defendant's motion for summary disposition and cross-motion for summary disposition. In that response and cross-motion, plaintiff asserted that in the previous litigation, the question of her entitlement to unemployment benefits was an issue "incorporated into the underlying litigation." Plaintiff continued:

When the parties began settlement negotiations, the agreement was to resolve *all* known and unknown claims relating to and arising from Defendant's termination of Plaintiff. Defendant's contesting of Plaintiff's benefits was one of the known claims prior to the parties entering into settlement negotiations. . . .

* * *

Defendant has failed to cite any case law or provide any support to the claim that there is a requirement that all known claims be *specifically* identified in a settlement agreement. It is disingenuous for Defendant to attempt to assert that because the unemployment claim was not specifically identified in the Settlement Agreement, it was not included as a known claim that was released.

Plaintiff argued that defendant violated paragraphs 3 and 4 of the settlement agreement by continuing to protest her entitlement to unemployment benefits, and that she accordingly was entitled to injunctive relief preventing defendant "from participating and presenting testimony at the next hearing with the Administrative Law Judge," as well as attorney fees and costs for its violation of the settlement agreement.

On April 10, 2023, a few days after hearing oral arguments on the competing motions for summary disposition, the trial court provided its opinion on the record. The trial court concluded that defendant violated paragraph 3 of the settlement agreement by "persisting to litigate and oppose [plaintiff's] unemployment claim," and defendant violated paragraph 4 by "resubmission of the factual record that they had already submitted." The trial court thus ordered that defendant

was "enjoined from opposing the Plaintiff's unemployment claim." However, the trial court also concluded that there is a question of fact as to causation, i.e., whether the UIA "would have gone ahead and – and reversed them self [sic] anyway based on the record that they already had."

On April 18, 2023, the trial court entered an order denying the competing motions for summary disposition, and a separate order granting plaintiff injunctive relief by preventing defendant from opposing her claim for unemployment benefits and ordering the parties to submit the settlement agreement to the ALJ.[2]

On June 22, 2023, defendant filed a brief in advance of trial, representing the following facts to the trial court:

> On April 24, 2023, the final telephone hearing was held regarding Plaintiff's appeal of the denial of unemployment benefits. While Defendant and counsel appeared for the hearing, consistent with this Court's order, Defendant did not participate. On May 1, 2023, the Administrative Law Judge reversed the December 21, 2021, redetermination and allowed Plaintiff's benefits. . . . Accordingly, Plaintiff need not repay unemployment benefits she received prior to the redetermination.

Accordingly, defendant argued that "Plaintiff has sustained no monetary damages because the Administrative Law Judge reversed the redetermination that disallowed her benefits." Defendant further argued that in the event the trial court concluded that plaintiff was entitled to attorney fees, she only was entitled to "the fees incurred in the [instant] Circuit Court action," not any fees arising from the administrative proceedings.

At about the same time, plaintiff filed her trial brief and, separately, a petition for attorney fees in the amount of $28,055.00 and costs in the amount of $1,011.14. In her trial brief, plaintiff argued that "Defendant's breach of the Settlement Agreement caused Plaintiff damages in that she incurred unnecessary legal fees and costs as a direct result of Defendant's breach of the Settlement Agreement." Thus, plaintiff concluded, she was entitled to attorney fees and costs under paragraph 9 of the settlement agreement. In her petition for attorney fees and costs, plaintiff asserted that she was entitled to all such fees and costs associated with enforcement of the settlement agreement. The accompanying documents indicated that plaintiff sought attorney fees for work performed both in the trial court and in the administrative proceedings, and costs incurred in the administrative proceedings as well.

In response, defendant argued that plaintiff was not entitled to attorney fees and costs that were incurred in the administrative proceedings because "Plaintiff was not enforcing the Settlement Agreement in the hearings before the Administrative Law Judge (ALJ). Rather, she was appealing the denial of unemployment benefits." Defendant further argued that the requested

---

[2] While the trial court nominally denied plaintiff's motion for summary disposition, the effect of its two orders, as well as its opinion from the bench, was to partially grant summary disposition in favor of plaintiff on the issue of whether defendant violated the settlement agreement.

attorney fees were excessive and that she failed to mitigate her damages because she did not file her complaint until August 2022.

At an October 27, 2023 motion hearing, the trial court generally ruled in favor of plaintiff but awarded her a lower amount of attorney fees than requested:

> The Court has now carefully considered Plaintiff's bill of cost and the Defendant's written objections there to. The Court finds that $250 per hour is the customary rate charged in this locality during the relevant time period for this type of legal work . . . .
>
> The Court further finds that the 88.3 hours billed by Plaintiff's counsel for representation in the administrative litigation before LARA negotiations in attempting to enforce the contract, and also pursuing relief in this lawsuit, all of that was necessary and reasonable. So the Court has considered in addition all of the eight [*Pirgu*] factors, but does not find [sic] that the analysis results in the adjustment of the attorney fee award of $22,075. . . . [T]hen the transcript fees and filing fee total by my math, which is not ideal, $1,011.14.

Shortly thereafter, the trial court entered its final order memorializing its opinion on the record. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of summary disposition." *Daystar Seller Fin, LLC v Hundley*, 326 Mich App 31, 34; 931 NW2d 15 (2018). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court also reviews de novo questions of statutory interpretation, *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009), as well as questions of contract interpretation, *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). Finally, the issue of whether attorney fees and costs are recoverable under a contractual provision is a question of law reviewed de novo. See *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 588; 735 NW2d 644 (2007).

## III. RELEASE

Defendant argues that the trial court erred by ruling that it violated the August 23, 2021 settlement agreement by submitting documents to the ALJ within the Michigan Office of

Administrative Hearings and Rules (MOAHR) stating that plaintiff was not entitled to unemployment benefits because she was terminated for misconduct.[3] We disagree.

The unemployment system generally operates as follows:

> All employers subject to the [Michigan Employment Security Act (MESA), MCL 421.1 *et seq*.] are responsible for paying unemployment-insurance taxes, or contributions, to the Agency. The Agency places these contributions into the unemployment-compensation fund. From this fund, the Agency pays unemployment benefits to eligible and qualified workers. Benefits paid to claimants are charged against an employer's account. Under MCL 421.19 (Section 19), an employer is taxed either at the new-employer rate or at a calculated, experienced-employer rate based on its unemployment experience. Therefore, the more an employer's former workers are awarded unemployment benefits, the higher its tax rate will be. [*Dep't of Talent & Economic Dev v Great Oaks Country Club, Inc*, 507 Mich 212, 218-219; 968 NW2d 336 (2021) (footnotes omitted).]

According to defendant, MCL 421.20(a)(2) and MCL 421.54(a) of the MESA, taken together, implicitly require an employer to comply with requests for information from the UIA. Thus, defendant asserts, it was required to submit documentation to the ALJ indicating the reason why plaintiff was terminated.

MCL 421.20(a)(1) provides that an employer is entitled to an offsetting "credit" when the UIA improperly pays benefits to a former employee, and MCL 421.20(a)(2) provides that the employer is not entitled to the credit when the improper payment is the result of a pattern of failure to respond to UIA requests for information:

> If an employer or employer's agent has a pattern of failing to respond with timely or adequate information requested by the unemployment agency regarding a claimant's disqualification from receiving benefits or period of ineligibility, benefits paid to a claimant as a result of the employer's or employer's agent's failure to provide timely or adequate information must be charged to the employer's account and the employer's account must not be credited. . . .

Relatedly, MCL 421.54 provides for civil and criminal penalties for certain willful violations of the MESA:

> (a) A person, including a claimant for unemployment benefits, an employing entity, or an owner, director, or officer of an employing entity, who willfully violates or intentionally fails to comply with any of the provisions of this act, or a regulation of the unemployment agency promulgated under this act for

---

[3] MCL 421.29(1) provides that a claimant is disqualified from receiving unemployment benefits in certain cases. See, e.g., MCL 421.29(1)(a) ("Left work voluntarily without good cause attributable to the employer or employing unit.").

which a penalty is not otherwise provided by this act is subject to the following sanctions, notwithstanding any other statute of this state or of the United States:

(*i*) If the unemployment agency determines that an amount has been obtained or withheld as a result of the intentional failure to comply with this act, the unemployment agency may recover the amount obtained as a result of the intentional failure to comply plus damages equal to 3 times that amount.

(*ii*) The unemployment agency may refer the matter to the prosecuting attorney of the county in which the alleged violation occurred for prosecution. . . .

Initially, we note that defendant, and likely plaintiff too, may be slightly confused as to the administrative posture of the case. The UIA, which is an agency within the Department of Labor and Economic Opportunity, decided on December 15, 2021, that plaintiff was not entitled to unemployment benefits. Shortly thereafter, plaintiff sought to appeal that determination to an ALJ as allowed by MCL 421.33. The ALJ performs his or her duties as an individual within the MOAHR, which is an independent agency within the Department of Licensing and Regulatory Affairs. This is why the March 18, 2022, "Notice of Telephone Hearing" mailed by the MOAHR to defendant includes statements such as, "The Administrative Law Judge does **not** have direct access to the Unemployment Insurance Agency's computer system for the purpose of obtaining Agency records," and "If you wish to offer any papers or records relevant to the case, including any records (writings, recordings, or photographs) previously sent to the Unemployment Insurance Agency, **YOU MUST SEND THEM TO THE JUDGE AND THE OTHER PARTY** in time to ensure the documents are received before the date of the scheduled hearing." (Emphasis in original.) Simply put, after plaintiff challenged the UIA's final decision on January 5, 2022, the subsequent administrative proceedings occurred not in the UIA, but in the MOAHR. This means that, for example, when defendant submitted documentation about plaintiff's termination on or about March 30, 2022, it submitted that documentation to the MOAHR, not the UIA.

Bearing that administrative posture in mind, paragraphs 3 and 4 of the settlement agreement, as quoted above, provide as follows:

3. This release extends and applies to, and also covers and includes, all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences thereof, as well as those now disclosed and known to exist. The provisions of any state, federal, local or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries or damages, which are unknown or unsuspected to exist at the time, to the person, executing such release, are hereby expressly waived.

4. The parties hereto mutually agree that they will not, in any way, disparage, demean, make negative comments about, or take negative action against the other or their agents, employees, representatives or others associated with the transaction which is the subject of this Agreement or assist in any way other individuals or entities attempting to make or making such a claim of any type. This prohibition includes but is not limited to making or assisting in the making of any

-8-

disparaging, demeaning, or negative comments of any type in social media or print media.

Certainly, the parties would have been better served to expressly reference plaintiff's ongoing claim for unemployment benefits in the settlement agreement. Nonetheless, we agree with plaintiff and the trial court that paragraph 4 is sufficiently broad to encompass defendant's conduct in the administrative proceedings after the August 23, 2021 date of the settlement agreement. In particular, paragraph 4 provides that each party is prohibited from "mak[ing] negative comments about" the other party or "tak[ing] negative action against the other" with regard to the underlying transaction, i.e., the employment termination. When defendant submitted documentation to the ALJ on or about March 30, 2022, indicating that plaintiff was terminated for misconduct, doing so constituted taking negative action against plaintiff, as well as making negative comments about plaintiff. In other words, the decision to submit incriminating information about plaintiff to the ALJ, which would undermine her claim for unemployment benefits, constituted taking negative action. Further, the incriminating information itself was negative commentary about plaintiff. By the same measure, any similar conduct by defendant in opposing plaintiff's claim for unemployment benefits after March 30, 2022, also would constitute a violation of paragraph 4 of the settlement agreement.

While defendant strenuously argues that it is required under the MESA to comply with UIA requests for information, as previously explained, the administrative case was transferred to a separate agency, the MOAHR, on about January 5, 2022, when plaintiff appealed the Notice of Redetermination. Thus, the MESA provisions relied upon by defendant do not shield its conduct after that date. Further, defendant does not argue that it was required, by statute or administrative rule, to submit incriminating documentation about plaintiff to the ALJ. To the contrary, the March 18, 2022, "Notice of Telephone Hearing" states that defendant may provide documentation "[i]f you wish."

Accordingly, the trial court correctly ruled that defendant violated paragraph 4 of the settlement agreement by continuing to challenge plaintiff's claim for unemployment benefits, and that its violation in this regard was not excused by the MESA. Therefore, we affirm the trial court on this issue.

## IV. ATTORNEY FEES

Defendant argues that the trial court awarded plaintiff an excessive amount of attorney fees and costs because she failed to mitigate her damages, i.e., she failed to reduce the amount of attorney fees incurred, and because the settlement agreement does not allow for an award of fees and costs that are incurred in administrative proceedings. We disagree with defendant's first argument because the settlement agreement refers to "actual attorneys' fees," and the word "actual" does not allow a court to adjust an award of such fees downward. However, we agree with defendant's second argument that the settlement agreement only contemplates that attorney fees and costs that are directly incurred in judicial litigation are awardable.

Once again, paragraph 9 of the settlement agreement provides as follows:

This Agreement contains provisions related to confidentiality and non-disparagement and other non-monetary obligations and the violation of those provisions may cause irreparable injury to the parties, the amount of which will be extremely difficult, if not impossible, to determine and may not be adequately compensable by monetary damages alone. Accordingly, the parties shall be entitled to injunctive and other equitable relief only in Charlevoix County, Michigan, to enforce this Agreement or make claims under the Agreement and, if successful, will be entitled to receive from the other party all costs associated with its enforcement (including actual attorneys' fees, disbursement and costs).

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). "Under that rule, each party is responsible for his or her own attorney fees unless a statute or court rule specifically authorizes the trial court to order an award of attorney fees." *Id.* at 194. "However, the parties to an agreement may include within the agreement a provision respecting the payment of attorney fees, which courts will enforce like any other term unless contrary to public policy." *Id.* "Because the authority to award attorney fees arises under the terms of the agreement, the attorney fees are a type of general damages." *Id.*

Ordinarily, a contractual provision concerning "attorney fees" will be limited to reasonable attorney fees. See *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195-196; 555 NW2d 733 (1996). Here, however, the settlement agreement refers to "actual attorneys' fees." This Court has held, albeit in an unpublished opinion, that such language is different from "reasonable attorney fees," so the "reasonable" limitation does not apply. See *Ward v Filarski*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2019 (Docket No. 340707), at 9 ("However, because the purchase agreement explicitly provided for the award of 'all actual attorney fees and costs incurred by the Sellers,' the court was not required to make findings regarding reasonableness, and did not abuse its discretion in making this award.").[4] See also *Zenner v Holcomb*, 147 Idaho 444, 451; 210 P3d 552 (2009) ("Here, the district court found the contract calls for 'actual' attorney fees. . . . The contract provision does not contemplate the court's involvement in determining whether the fee is reasonable.").

Defendant argues that the trial court awarded plaintiff an excessive amount of attorney fees because she failed to mitigate her damages, i.e., she waited until August 2022 to file her complaint. Defendant implies that if plaintiff had filed her complaint earlier, much of the instant litigation could have been avoided, and her attorney fees would have been reduced.

"Where one person has committed a Tort, breach of contract, or other Legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages." *Shiffer v Bd of Ed of Gibraltar Sch Dist*, 393 Mich App 190, 197; 224 NW2d 255 (1974) (quotation marks and citation omitted). However, defendant does not cite any cases applying the mitigation doctrine to an award of attorney fees. In our view, that

---

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

principle would be applied as a matter of course in determining an award of "reasonable" attorney fees. See generally, *Smith v Khouri*, 481 Mich 519, 529-530; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). For example, unnecessarily extending litigation might be considered as a fact relating to "the amount involved and the results obtained," one of the factors used to determine a reasonable attorney fee. See *id*. at 530.

In this case, in contrast, the settlement agreement refers to "actual attorneys' fees." Because this language precludes a court from considering whether the attorney fees incurred were "reasonable," see *Zenner*, 147 Idaho at 451, it seemingly follows that a court similarly is precluded from considering whether the attorney fees incurred could have been reduced through mitigation. That is, the word "actual" suggests that a court must award to a prevailing party all attorney fees that the party actually incurred, and not limit fees to those that hypothetically would have been incurred if the party had acted otherwise. Thus, we disagree with defendant that the trial court erred by failing to consider the mitigation doctrine.

However, we agree with defendant that the settlement agreement does not contemplate an award of attorney fees and costs incurred in the administrative proceedings. The settlement agreement states that a prevailing party only is entitled to "all costs associated with its *enforcement* (including actual attorneys' fees, disbursement and costs)." (Emphasis added.) "As commonly defined, to 'enforce' means 'to compel obedience.' " *Ambac Assurance Corp v US Bank Nat'l Assoc*, 632 F Supp 3d 517, 532 (SD NY, 2022) (citation omitted). "A means to compel obedience with a legal obligation is to bring a lawsuit." *Id*. Similarly, *Black's Law Dictionary* (9th ed 2009) defines "enforcement" as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement."

Here, plaintiff's August 2022 complaint was necessary to compel defendant's obedience with the settlement agreement through a court injunction. Thus, attorney fees and costs incurred in the instant litigation may be recovered, as neither party disputes. However, the administrative proceedings themselves were not necessary to compel defendant's obedience with the settlement agreement. Rather, the administrative proceedings were ancillary to the settlement agreement. In other words, plaintiff was not required to take any action whatsoever in the administrative proceedings to compel defendant's obedience with the settlement agreement. Therefore, because the attorney fees and costs that plaintiff incurred in the administrative proceedings were not associated with "enforcement" of the settlement agreement, those fees and costs were in relation to plaintiff's application for unemployment benefits and, thus, are not recoverable by plaintiff under the terms of the agreement.

Admittedly, as the trial court implied, the lengthy administrative proceedings were necessitated because defendant violated the settlement agreement. Thus, it is reasonable to conclude that plaintiff incurred substantial attorney fees, and some relatively minimal costs, because of that violation. However, attorney fees ordinarily cannot be awarded as an item of damages unless specifically authorized, see *Pransky*, 311 Mich App at 194, and plaintiff has not offered any independent explanation for why the fees and costs incurred in the administrative proceedings would be awardable notwithstanding the terms of the settlement agreement, which specifically limits fees and costs to enforcement of the agreement between the parties.

For these reasons, we conclude that the trial court erred by granting plaintiff $22,075.00 in attorney fees and $1,011.14 in costs, as these amounts include those relating to the administrative proceedings, and the court is reversed to the extent that they do. On remand, the attorney fees and costs award should be reduced to the extent those fees and costs were incurred in the administrative proceedings only. Attorney fees and costs incurred in the instant litigation are recoverable.

## V. CONCLUSION

The trial court correctly ruled that defendant violated the August 23, 2021 settlement agreement by submitting documents to the ALJ stating that plaintiff was not entitled to unemployment benefits because she was terminated for misconduct. However, the trial court awarded plaintiff an excessive amount of attorney fees and costs because the settlement agreement only contemplates that attorney fees and costs that are directly incurred in judicial litigation are awardable. Accordingly, we affirm the trial court in part, reverse in part, and remand to that court for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman

-12-